**Don NOFFSINGER, Appellant,**

v.

**STATE of Alaska, Appellee.**

No. A–4409.

Court of Appeals of Alaska.

April 23, 1993.

---

4. At oral argument counsel for Ketchikan Pulp conceded that the Board possessed this authority under 8 AAC 45.160.

Susan M. Carney, Asst. Public Defender, Fairbanks, and John B. Salemi, Public Defender, Anchorage, for appellant.

Daniel R. Cooper, Jr., Asst. Dist. Atty., Harry L. Davis, Dist. Atty., Fairbanks, and Charles E. Cole, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and MANNHEIMER, JJ.

## OPINION

BRYNER, Chief Judge.

Don P. Noffsinger pled no contest to and was convicted of a single count of second-degree theft, in violation of AS 11.46.-130(a)(1). Superior Court Judge Mary E. Greene suspended the imposition of Noffsinger's sentence on condition that he serve ninety days in jail, pay $8,300 restitution, and complete five years of probation. On

appeal, Noffsinger challenges the restitution order on several grounds. We affirm.

Noffsinger's conviction stemmed from his theft of gold from several of the sluice boxes at a gold mine in the Deadwood Creek area, near Central. During the theft, Noffsinger was accompanied by another man, Jeffrey R. Hunt. When the Alaska State Troopers arrested Noffsinger and Hunt several days after the theft, they recovered approximately four ounces of stolen gold. In interviews with the troopers and, subsequently, with the probation officer who wrote the presentence report, Noffsinger alleged that the gold recovered upon his arrest constituted approximately half of the total gold stolen. Relying on an apparently undisputed value of $267.50 per ounce, Noffsinger estimated that all of the stolen gold was worth approximately $2,000.

The owners of the mine disputed Noffsinger's estimate. In testimony at the sentencing hearing, George W. Seuffert, Jr., estimated that a total of about thirty-five ounces of gold had been taken by Noffsinger and Hunt. Seuffert, a geological engineer and part owner of the mine where the theft occurred, had five years' experience working the mine's sluice boxes and described himself as "fairly good at reading" them.

Seuffert testified that Noffsinger and Hunt took the gold that had accumulated on "the top carpets on the side [sluice] boxes, and those are by far the richest, particularly one on the right side facing down the sluice." According to Seuffert, on the evening before the theft, he had observed a substantial amount of gold accumulating in the sluice boxes, which had been operating for about a week without being cleaned out. On the day after the theft, the owners of the mine cleaned the remaining gold out of all of the mine's sluice boxes; their efforts yielded a total of approximately sixty-five ounces of gold. Based on his experience with the mine's operations, his pre-theft observations, and the quantity of gold remaining after the theft, Seuffert estimated that the thieves had stolen thirty-five ounces of gold.

Noffsinger did not testify at the sentencing hearing, relying instead on his claims to the troopers and to the author of the presentence report that the four ounces of gold seized by the troopers represented about half of the total amount stolen. Noffsinger argued at the sentencing hearing that these claims were more credible than Seuffert's speculative extrapolation.

Judge Greene, however, found Seuffert's estimate credible and concluded that "it's more likely true than not true that right around 35 ounces of gold were taken." Deducting the four ounces of gold recovered by the troopers, and multiplying the remainder by $267.50, Judge Greene calculated the value of the unrecovered gold to be approximately $8,300. The judge ordered Noffsinger to pay the full amount of restitution, noting that he would be jointly and severally liable with his accomplice, Hunt (who had absconded and whose whereabouts were unknown).

■ On appeal, Noffsinger first claims that Judge Greene did not properly determine the amount of restitution. He alleges, initially, that the judge failed to make an adequate inquiry into his ability to pay. *See Ratliff v. State*, 798 P.2d 1288, 1293 (Alaska App.1990). However, the presentence report contained a full account of Noffsinger's employment history and summarized his financial condition at the time of the offense. Although Noffsinger actively disputed the correct amount of restitution, at no point did he raise any question concerning his ability to pay; in fact, Noffsinger affirmatively urged the court to impose restitution in the amount he estimated to be correct.

There is nothing in the record indicating that Noffsinger cannot realistically be expected to pay the $8,300 in restitution over the course of his five-year probationary term. Given the totality of the circumstances, we conclude that further inquiry into Noffsinger's ability to pay was unnecessary.

■ Noffsinger further alleges that there was insufficient evidence to support the court's finding that thirty-five ounces

of gold were taken in the theft. An award of restitution must be supported by substantial evidence. *Harris v. State,* 678 P.2d 397, 408 (Alaska App.1984), *rev'd on other grounds, Stephan v. State,* 711 P.2d 1156 (Alaska 1985). If uncertainty exists, the appropriate amount for restitution must be proved by a preponderance of the evidence. *See Brakes v. State,* 796 P.2d 1368, 1372 n. 5 (Alaska App.1990). When the accused, on appeal, challenges the sufficiency of the evidence as to restitution, this court does not pass on issues of credibility, which remain within the sole province of the sentencing court. *See Anthony v. State,* 521 P.2d 486, 492 (Alaska 1974). Instead, as in other situations involving claims of insufficient evidence, we construe the record in the light most favorable to the state and determine whether a reasonable fact-finder could conclude that the disputed amount of restitution was established by a preponderance of the evidence.

Noffsinger argues that Seuffert's extrapolation of the amount of gold stolen was too speculative to rely on. Noffsinger points out that Seuffert never established precisely how he arrived at his estimate. Yet Noffsinger failed to object to Seuffert's testimony on the ground that it was speculative—or, for that matter, on any other ground. Noffsinger also failed to request that Seuffert's expertise be established with greater particularity. Despite the opportunity for cross-examination, Noffsinger failed to question Seuffert about the precise manner in which he calculated that thirty-five ounces of gold had been taken.

From the current record, it appears that Seuffert's testimony was based not on speculation but rather on a combination of his extensive experience at the mine and his personal observations, both pre- and post-theft. Judge Greene was not clearly erroneous in relying on this testimony as a basis for the restitution award.

■ Noffsinger next challenges the sentencing court's decision to hold him jointly and severally liable for the full amount of restitution. He relies on AS 09.17.080(d), a recently enacted provision of Alaska's Code of Civil Procedure that precludes joint and several liability in civil tort actions and requires, instead, that judgment in such cases be entered "against each party liable on the basis of several liability in accordance with that party's percentage of fault." This provision, however, has no direct bearing in the criminal context, where the court's authority to require payment of restitution exists independently of its authority to order payment of damages in civil matters. *See* AS 12.55.-045(b).

Noffsinger nevertheless proposes that this court should, as a matter of sound policy, extend to the criminal context the statutory prohibition against joint and several liability for civil cases. As the sole basis for this proposal, Noffsinger cites a recent law review article on restitution in criminal cases that comments, in passing: "It would seem ... certain that criminal defendants are entitled to the benefits of the 'tort reform' package enacted as a result of Alaska's 1988 election, including the end of routine joint and several liability orders in cases involving codefendants." C.R. Pengilly, *Restitution, Retribution, and the Constitution,* 7 Alaska L.Rev. 333, 345 (1990) (footnote omitted). In advancing this proposition, however, the article Noffsinger relies on is as conclusory as Noffsinger's own argument.

The legislature presumably enacted AS 09.17.080(d) to counter what it saw as the potential inequity of applying joint and several liability in the tort context; this inequity consists in large measure of the fact that, among several independently negligent parties whose conduct combines to cause an injury, the party who is capable of paying—although only partially responsible—will end up paying the full award.

The scope of such inequity diminishes considerably in the criminal context. Restitution awards in criminal cases are expressly limited by statute to actual damages. *See* AS 12.55.045. Furthermore, unlike the civil context, restitution in criminal cases serves multiple purposes: in addition to compensating the victim, it can further the rehabilitation of the defendant, deter the

defendant and others, and express the community's condemnation of the defendant's crime.

Finally, and perhaps most significantly, a restitution award in a criminal case does not represent compensation for harm resulting from an act of ordinary negligence; rather, it must be predicated on an act committed with a culpable mental state falling so far beyond the pale of ordinary negligence as to merit criminal sanction.

We need not decide whether joint and several liability for restitution should be permitted in all criminal cases or when such liability might be impermissible. Here, Noffsinger intentionally stole the property of another. Although Noffsinger was accompanied by a confederate, in no realistic sense did Noffsinger's acts cause only a limited portion of the loss, and in no realistic sense was he only partially at fault. Any attempt to divine Noffsinger's "percentage of fault" in these circumstances would be a feckless exercise that would only serve to reward Noffsinger for electing to commit his crime in the company of an accomplice.

Hunt, Noffsinger's accomplice, has apparently absconded and may remain unavailable as a source of restitution. The resulting policy question, as we see it, is this: as between Noffsinger and his victim, who should bear the risk of Hunt's continued unavailability to make restitution? In context, we believe the answer self-evident, and we find no abuse of discretion in the trial court's decision to hold Noffsinger jointly and severally liable for the full amount of restitution.

Noffsinger lastly argues that Judge Greene erred in the course of her sentencing remarks by warning that if Noffsinger did not make restitution as ordered, "I'll guarantee that ... I won't set your [suspended imposition of sentence] aside—it won't set the conviction aside." Noffsinger takes issue with this comment, noting that only willful failure to pay restitution can justify revoking probation and imposing sentence on a defendant who is required to pay restitution as a condition of a suspended imposition of sentence. *See Lo-*

*minac v. Anchorage,* 658 P.2d 792, 794 (Alaska App.1983).

We do not, as does Noffsinger, interpret Judge Greene's remarks as threatening action regardless of Noffsinger's ability to pay. Moreover, the action threatened by Judge Greene appears at most to be denial of a set-aside order under AS 12.55.085(e), not revocation of probation and imposition of sentence, as was the case in *Lominac.*

This court has never had occasion to consider whether non-willful failure to pay restitution might constitute good cause for denial of a set-aside. Apart from citing *Lominac,* which is inapposite, Noffsinger has provided us with no meaningful briefing on this subject. If Noffsinger successfully completes his probation but is unable to make restitution despite good faith efforts, and if, as a consequence, Judge Greene declines to set aside his conviction, Noffsinger will have the right to an appeal, and the issue will be fully ripe. As the cases stands now, however, we find Noffsinger's claim premature and far too speculative to warrant a decision.

The sentence is AFFIRMED.