880 P.2d 1067 (1994)
J.C.W., Appellant,
v.
STATE of Alaska, Appellee.
No. A-5137.
Court of Appeals of Alaska.
September 16, 1994.
*1068 Colleen A. Kosluchar, Asst. Public Defender, Fairbanks, and John B. Salemi, Public Defender, Anchorage, for appellant.
Nora King, Asst. Atty. Gen., Fairbanks, and Bruce M. Botelho, Atty. Gen., Juneau, for appellee.
Before BRYNER, C.J., and COATS and MANNHEIMER, JJ.

*1069 OPINION

BRYNER, Chief Judge.
J.C.W., a minor, appeals a disposition order entered in a delinquency proceeding by Superior Court Judge Niesje J. Steinkruger. J.C.W. argues that the superior court committed error in conducting his disposition hearing and in fixing the amount of restitution he was required to pay.

FACTS
J.C.W. and another minor stole and damaged various items of Jerry and Anita Simpson's personal property. The state filed a delinquency petition alleging that J.C.W. had engaged in conduct amounting to second-degree criminal mischief and first-degree burglary. J.C.W. eventually admitted committing third-degree criminal mischief and criminal trespass; he was adjudicated a delinquent minor, and a disposition hearing was scheduled before Judge Steinkruger.
Prior to J.C.W.'s disposition hearing, Judge Steinkruger received a letter from the Simpsons; attached to the letter was their victim impact statement, a list of lost property, and photographs of the damage done to certain property. Judge Steinkruger also received letters from an uncle of Jerry Simpson and Anita Simpson's father. The letters complained, in part, that the prosecuting attorney was downplaying the magnitude of J.C.W.'s crime and urged Judge Steinkruger to appoint a different prosecuting attorney. The letter from Anita Simpson's father also attached a newspaper editorial suggesting that judges hold parents financially accountable for their children's criminal misconduct. Upon receiving these materials, the court evidently distributed copies to the parties.
J.C.W. and the state jointly objected to the letters, arguing that their acceptance and consideration by the court was unauthorized. Judge Steinkruger found these objections groundless and declined to disregard the letters.
J.C.W.'s predisposition report itemized damages totaling $10,164.56 and addressed the manner in which J.C.W. could make restitution in the seventeen months remaining before his nineteenth birthday, when the children's court would lose jurisdiction over the case. The predisposition report recommended assigning J.C.W.'s 1994 permanent fund dividend to the Simpsons and requiring J.C.W. to pay $250.00 per month for seventeen months, for a total of $5,150.00  roughly half the damages caused by J.C.W. and his companion. Based on a review of J.C.W.'s earning capacity, the report concluded that requiring such payments would be realistic; the report further noted that J.C.W. and his companion appeared to be "equally responsible for losses and damages."
At the disposition hearing, the Simpsons appeared in the company of Anita Simpson's father, Dr. Rudolph Krejci. J.C.W. did not dispute the Simpsons' right to attend the hearing as victims of the offense, pursuant to AS 47.10.070(b). However, J.C.W. did object to Krejci's presence, "since he is not a victim in this case." The state joined in J.C.W.'s objection, pointing out that "the statute clearly says the victim or the victim's agent. I don't believe it allows for the victim and agent." Judge Steinkruger permitted Krejci to remain, stating, "I believe that a member of the victim's family can be included within the broad meaning of that statute."
During the disposition hearing, Georgene Brennan, the author of the predisposition report, notified the court that she had just received information concerning additional damages the Simpsons had suffered. Brennan stated, however, that "restitution is going to have to be limited to what [J.C.W.] can realistically earn before his nineteenth birthday and I'm not sure he can earn more than $5,000.00 even though he owes a great deal more." The court ultimately ordered that J.C.W. be jointly and severally liable for the full amount of restitution that was undisputed, $10,164.56, and directed that J.C.W. attempt to comply with the restitution award by: 1) depositing the bulk of his $200.00-$300.00 savings account with the court; 2) applying both his 1994 and 1995 permanent fund dividend payments toward restitution; and 3) making monthly payments of $250.00 from wages he earns from part-time work during the school year, with an increase to *1070 $500.00 per month if J.C.W. worked more than thirty-two hours a week.

DISCUSSION
On appeal, J.C.W. challenges as erroneous the superior court's refusal to disregard letters from relatives of the Simpsons, the court's denial of his request to exclude Anita Simpson's father, Dr. Krejci, from the disposition hearing, and the court's order holding J.C.W. jointly and severally liable for the full, undisputed amount of restitution, rather than for half of the total, as the predisposition report recommended.

A. Standard of Review

As to each issue, the state concedes error. The state's concession of error is not determinative:
Although a confession of error by the Attorney General is entitled to great weight, it does not relieve this court of the obligation to perform our judicial function. The public interest in criminal appeals does not permit their disposition by party stipulation. We must therefore independently review the proceedings below to insure that the error confessed is supported by the record on appeal and has legal foundation.
Marks v. State, 496 P.2d 66, 67-68 (Alaska 1972) (footnote omitted).

B. Letters from the Simpsons' Relatives

J.C.W. argues that the trial court should not have considered letters from the Simpsons' relatives, because consideration of such materials is not authorized by AS 47.10.081(a) or Alaska Delinquency Rule 22.
Alaska Statute 47.10.081(a) requires that a court conducting a disposition hearing in a juvenile delinquency case be given "a predisposition report ..., a victim impact statement ..., and any further information that the court may request." Alaska Delinquency Rule 22(a)(1) specifies the information to be included in the predisposition report.[1] Although the statute and rule list the information that must be made available to aid the court in a disposition hearing, neither purports to limit what materials the court may consider as a discretionary matter. The parties cite no authority for reading such a limitation into these provisions, and we decline to do so.[2]Cf. Nelson v. State, 874 P.2d 298, 302-03 (Alaska App. 1994) (language in Alaska Criminal Rule 16 requiring disclosure of certain information does not act as a limitation depriving the court of discretion to order disclosure of other information).
In the absence of an express restriction governing the consideration of unsolicited letters, the superior court was authorized to "proceed in any lawful manner" that was not "inconsistent with [the Delinquency Rules] and [did] not unduly delay or otherwise interfere with the unique purpose and character of delinquency proceedings." Delinquency Rule 1(f). The pertinent question, then, is whether consideration of unsolicited letters would "unduly delay or interfere with the unique purpose and character" of J.C.W.'s disposition hearing.
J.C.W. maintains that consideration of unsolicited letters "compromises the confidential nature of the delinquency proceedings and juvenile court files," effectively rendering them public. We find little merit to this argument. The confidentiality of juvenile records provided for in AS 47.10.090(b) is *1071 aimed at protecting the privacy of minors by preventing the dissemination of information concerning juvenile delinquency proceedings to the public. We know of no reason why the guarantee of confidentiality should insulate the court from relevant information submitted to it by members of the public.
Delinquency Rule 2(g) explicitly describes juvenile disposition proceedings as "analogous to a sentencing hearing in a criminal case." In criminal cases, sentencing judges have discretion to consider a broad range of sentencing information, cf. Nukapigak v. State, 576 P.2d 982, 984-85 (Alaska 1978), and are not prohibited from considering unsolicited letters, provided that the parties are given appropriate notice of their submission. Bowlin v. State, 643 P.2d 1, 2-3 (Alaska App. 1982). When a court conducting a disposition hearing in a delinquency matter receives unsolicited information that is irrelevant or otherwise objectionable, the parties may of course object on substantive grounds and seek its exclusion, just as they could do in a criminal case. But when the unsolicited materials are relevant and otherwise unobjectionable, we see no ground for their exclusion.[3]
We conclude that Judge Steinkruger did not abuse her discretion in declining to disregard the unsolicited letters.[4]

C. Presence of Dr. Krecji

Alaska Statute 47.10.070(a) generally bars members of the public from attending disposition hearings. Subsection (b) of the same statute, however, expressly authorizes attendance by "the victim of an offense that a minor is alleged to have committed, or the designee of the victim." J.C.W. argues that Dr. Krejci did not qualify as either a victim or a victim's designee, and so should have been excluded from the disposition hearing pursuant to AS 47.10.070(b).
J.C.W. correctly asserts that Krejci was not the victim of the offense. J.C.W. further asserts that Krejci's attendance as a victim designee was not justified, since AS 47.10.070 authorizes only the victim "or" the designee of the victim to attend, and since the victims personally attended in this case. The state concedes that J.C.W.'s argument has merit, and we conclude that this concession is well founded.
Our conclusion that Krejci did not qualify for attendance under subsection (b), as a victim or victim designee, does not necessarily establish the impropriety of his presence at the disposition hearing. Although subsection (a) of AS 47.10.070 generally prohibits the public from attending juvenile proceedings, it allows the court leeway in individual cases by providing that "the court, in its discretion, may permit individuals to attend a hearing, if their attendance is compatible with the best interests of the minor."
In W.M.F. v. Johnstone, 711 P.2d 1187 (Alaska App. 1986), we had occasion to consider the circumstances under which it is "compatible with the best interests of the minor" to admit an individual member of the public to a disposition hearing; we concluded that compatibility could be found only "when the interest of the individual is substantial and when the possibility of significant harm to the minor is negligible." Id. at 1189-90.[5]
In the present case, a strong argument could be made that admission of Krejci was justified under this standard: as the parent of one of the victims, Krejci certainly had a substantial interest in the case; moreover, it *1072 seems highly likely that the harm to J.C.W. resulting from Krejci's attendance was negligible, since Krejci had evidently already attended a previous hearing in J.C.W.'s case as the designee of Anita Simpson, who did not attend the earlier proceeding.
Nevertheless, W.M.F. calls for a careful case-by-case balancing of the respective interests of the minor and the person who seeks admission to a juvenile proceeding, before the superior court decides the issue of admission. W.M.F., 711 P.2d at 1190. W.M.F. also plainly contemplates express findings by the court explaining its decision. Id. Judge Steinkruger did not undertake the requisite balancing and made no findings to support her decision admitting Krejci. The judge's decision appears to have been based on the mistaken assumption that AS 47.10.070(b) could be construed to allow Krejci's attendance as a matter of right.
Under the circumstances, we believe it necessary to remand this case to the superior court for an express finding as to whether Krejci's admission was justified under W.M.F. If the court finds on remand that Krejci's admission was not justified under the W.M.F. standard, then J.C.W. should be afforded a new disposition hearing.[6]

D. Amount of Restitution Ordered

J.C.W. contends that the trial court erred in setting the amount of his restitution. Specifically, he asserts that the court should not have doubled the recommended amount of $5,082.28 by making him jointly and severally liable for $10,164.56, the full undisputed amount of damages in the case. J.C.W. contends that the trial court ignored evidence indicating that this amount exceeded his earning capacity, and he argues that the court failed to consider the negative impact this excessive amount would have on his rehabilitation. The state concedes error, agreeing that it is unrealistic to believe that J.C.W. will be capable of earning $10,164.56 before his nineteenth birthday.
Alaska Statute 47.10.080(b)(4) authorizes the court in a juvenile delinquency matter to "order the minor to make suitable restitution." Although this provision does not define the term "suitable restitution" or expressly provide for consideration of the minor's earning capacity, we have previously likened the provision to AS 12.55.100(a)(2), the statute governing restitution for adult offenders. See J.M. v. State, 786 P.2d 923 (Alaska App. 1990). At the time of J.C.W.'s offense, AS 12.55.100(a)(2) required sentencing courts in criminal cases to inquire into a defendant's ability to pay before imposing restitution.[7] Other states also appear to require inquiry into earning capacity in delinquency cases and to forbid restitution orders exceeding a minor's ability to pay. See, e.g., In re Maricopa County Juvenile Action No. J-96304, 147 Ariz. 153, 708 P.2d 1344 (App. 1985); Charles S. v. Superior Court, 32 Cal.3d 741, 187 Cal. Rptr. 144, 653 P.2d 648 (1982) (en banc); State in the Interest of D.G.W., 70 N.J. 488, 361 A.2d 513 (1976).
The uncontroverted evidence before the court at the disposition hearing indicated that J.C.W. might be capable of paying a maximum of approximately $7,000.00 in restitution prior to his nineteenth birthday, the point at which the children's court would lose jurisdiction over him. Hence, if viewed in isolation, the provision of the court's restitution order holding J.C.W. jointly and severally liable for the total sum of $10,164.56 might be construed as excessive. We think it inappropriate, however, to view the $10,164.56 figure in isolation from the remainder of the restitution order.
Two aspects of the overall restitution order mitigate the effect of the provision holding J.C.W. responsible for the full amount of restitution. First, because the restitution order specifies that J.C.W. is to be jointly and severally liable with his accomplice, J.C.W. would become liable for the full amount only *1073 if his accomplice paid nothing toward restitution; conversely, if J.C.W's accomplice paid his share, J.C.W. would be required to pay only half the total figure, even though his earning capacity might permit him to pay somewhat more.
Second, the restitution order sets out a specific payment schedule for J.C.W. to follow in making his restitution payments. This schedule is geared to J.C.W.'s current earning capacity and imposes no undue burden on him. Reading the superior court's restitution order as a whole and in a common sense manner, we interpret the provision holding J.C.W. jointly and severally liable for $10,164.56 to do little more than leave the door open for future modification of J.C.W.'s payment schedule if his earning capacity increases significantly prior to his nineteenth birthday. Barring a future amendment of the restitution order based on an actual increase in earning capacity, J.C.W. will be able to remain in full compliance with the order by continuing to meet the originally specified payment schedule until his nineteenth birthday. He can thereby satisfy the restitution requirement upon reaching the age of majority, even though his total payments may fall considerably short of the full amount of $10,164.56.
So construed, the restitution order is inoffensive: it neither disregards the evidence concerning J.C.W.'s earning capacity, nor ignores the potentially deleterious effects on rehabilitation of an excessive payment requirement. We have previously held that joint and several liability for restitution may properly be ordered when a defendant can "realistically be expected to pay." Noffsinger v. State, 850 P.2d 647, 649 (Alaska App. 1993). We decline to find the restitution order in this case to be unrealistic.

CONCLUSION
This case is REMANDED for further findings concerning Dr. Krejci's presence at the disposition hearing, as directed herein. In all other respects, the disposition order is AFFIRMED.
NOTES
[1] Delinquency Rule 22(a)(1) states:

(a) Predisposition Report.
(1) The predisposition report filed by the Department may include information concerning the following: the juvenile's family background, educational history, past adjudications, verified past incidents of delinquent behavior; the juvenile's medical, psychological and psychiatric history; and a description of the delinquent act and the juvenile's attitude about the act. The report must contain a recommendation regarding the recommended form of treatment that would be in the best interests of the juvenile and the public, and the victim impact statement required by AS 47.10.081(a).
[2] We likewise decline to read Delinquency Rule 22(b), which provides that the court "may order mental and physical examinations of the juvenile, studies of the home of any person with whom the juvenile might be placed by the court, and may provide for any other reports to aid in disposition," as a restriction precluding the court from considering unsolicited material that it has not expressly ordered submitted.
[3] J.C.W. maintains that the police reports in his case were improperly divulged to the public. J.C.W. suggests that this alleged violation warranted exclusion of the letters. However, even assuming such a violation occurred, we fail to see why the remedy of suppression would be appropriate in the circumstances of this case.
[4] The state advances a conclusory argument that, if the letters were admissible, Judge Steinkruger gave disproportionate weight to them. Our review of the record convinces us that there is no merit to this claim.
[5] In 1986, subsection (b) of AS 47.10.070  allowing victims or victim designees to attend disposition hearings as a matter of right  had not yet been enacted; the statute consisted only of the language now embodied in subsection (a). To the extent that J.C.W. argues that the enactment of subsection (b) was meant to abrogate the court's discretionary authority to admit non-victim members of the public, we find the argument frivolous.
[6] Since neither party was able to address the issue of Krejci's admission in light of the W.M.F. standard prior to Judge Steinkruger's earlier ruling, the parties should be allowed the opportunity to request a hearing before the court makes its findings on remand.
[7] The Alaska legislature recently restricted a trial court's consideration of an adult defendant's ability to pay, see AS 12.55.045(f) & (g); we express no view on whether this restriction would affect juvenile delinquency proceedings.