Ishmael Lavaundus **THOMPSON**, Appellant,

v.

**STATE** of Alaska, Appellee.

No. A–8162.

Court of Appeals of Alaska.

Jan. 31, 2003.

Elizabeth D. Friedman, Anchorage, for Appellant.

Stephen B. Wallace, Assistant District Attorney, Susan A. Parkes, District Attorney, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

## OPINION

MANNHEIMER, Judge.

Under AS 12.55.045(f), when a sentencing court intends to order a defendant to pay more than $5000 in restitution, and when the defendant is going to serve at least 90 days in prison, the defendant is entitled to ask the court to reduce the restitution obligation. The statute declares that it is the defendant's burden to show, by clear and convincing evidence, that they are unable to pay the amount of restitution proposed. This appeal raises the question of how a sentencing court should assess a defendant's ability to pay the proposed amount of restitution when the defendant is one of a group of wrongdoers who are being held jointly and severally responsible for the restitution.

In the present case, the superior court evaluated the defendant's ability to pay under the assumption that the defendant would only have to pay a per capita share of the total restitution. We conclude that this was error. When a group is held jointly and severally liable for restitution, any individual defendant's ability to pay must be assessed under the assumption that this defendant may ultimately have to pay the full amount—unless the sentencing court concurrently establishes a payment schedule that is consistent with the defendant's ability to pay.

### Underlying facts

Ishmael Lavaundus Thompson and three accomplices were convicted of jointly participating in a first-degree assault. The superior court found that the victim of this assault was entitled to restitution in the amount of $33,197. The court proposed to hold each of the four accomplices jointly and severally liable for this amount.

Thompson offered evidence that he would be unable to pay $33,000 in restitution after he served his prison term. Specifically, Thompson testified that he was effectively an orphan (his mother was dead and his father's whereabouts were unknown); that his parents had not provided for him; that he had previously held only one job (a summer job for which he was paid the minimum wage); and that he had never completed high school (although he was working on a GED and was receiving training as a food-handler and custodian). Moreover, Thompson had been told that, because of his felony record, he would most likely be able to get only minimum-

wage jobs until he had established a good reputation.

The superior court found, by clear and convincing evidence, that Thompson currently had no assets and that "his potential for future earnings [was] a big question mark" because of his lack of work experience. Nevertheless, the court found that Thompson had failed to prove, by clear and convincing evidence, that he would be unable to pay a one-fourth share of the restitution (approximately $8000) after he served his prison sentence. The court therefore refused to reduce Thompson's restitution obligation. Thompson's judgement states that he is jointly and severally liable for the whole amount— $33,197.

*The meaning of AS 12.55.045(f) when a sentencing court imposes joint and several restitution liability on two or more accomplices*

■ Although Alaska law no longer imposes "joint and several" liability when two or more civil defendants are found to be joint tortfeasors [1], this Court has ruled that joint and several liability is still available in criminal cases when a sentencing court imposes restitution on two or more accomplices.[2] In the present appeal, we must determine the relationship between joint and several liability for restitution and a defendant's right to seek reduction of the restitution amount under AS 12.55.045(f) by proving inability to pay.

■ When a defendant is held jointly and severally liable for restitution, there is a chance that the defendant will ultimately be required to pay the whole amount. But the sentencing judge in Thompson's case ruled that Thompson's ability to pay the whole amount was irrelevant—that the real issue was whether Thompson could be expected to pay his per capita share (*i.e.,* a one-fourth share) of the restitution.

Thompson now challenges this ruling. He insists that, because he is potentially responsible for the entire amount of restitution (over $33,000), the superior court was obliged to decide whether he could reasonably be expected to pay the whole amount—and not just whether he could reasonably be expected to pay one-quarter of this amount.

In *J.C.W. v. State*, 880 P.2d 1067 (Alaska App.1994), we upheld an order of joint and several restitution liability against a similar challenge. The defendant in *J.C.W.* contested the sentencing judge's decision to hold him jointly and severally liable for $10,164.56 in restitution.[3] At sentencing, the defendant presented "uncontroverted evidence" that he could pay a maximum of approximately $7,000, and the State conceded that the full award of $10,164.56 exceeded the defendant's earning capacity.[4]

We agreed that, "if viewed in isolation", the provision holding J.C.W. jointly and severally liable for the entire amount of restitution "might be construed as excessive".[5] But we held that certain other provisions of the restitution order saved it from illegality.

First, we pointed out the obvious: that J.C.W. would be obliged to pay the full amount only if his accomplice failed to pay anything.[6] Second, we pointed out that the restitution order established "a specific payment schedule for J.C.W. to follow in making his restitution payments"—a schedule that was "geared to J.C.W.'s current earning capacity" and that "impose[d] no undue burden on him".[7] We then concluded:

Reading the ... restitution order as a whole and in a common sense manner, we interpret the provision holding J.C.W. jointly and severally liable for [the whole amount of restitution] to do little more than leave the door open for future modification of J.C.W.'s payment schedule if his

---

1. *See* AS 9.17.080 (codifying a system of comparative fault in tort litigation).

2. *See Noffsinger v. State,* 850 P.2d 647, 650–51 (Alaska App.1993).

3. *J.C.W.,* 880 P.2d at 1072.

4. *Id.*

5. *Id.*

6. *Id.* at 1072–73.

7. *Id.* at 1073.

earning capacity increases significantly [in the future].

*J.C.W.*, 880 P.2d at 1073.

Although our holding in *J.C.W.* may, at first blush, support the superior court's order in Thompson's case, we conclude that the most significant aspect of the restitution order in *J.C.W.* was the fact that (1) the defendant's restitution liability was tied to a payment schedule, and (2) this payment schedule was geared to the defendant's ability to pay. Thus, even if J.C.W.'s accomplice failed to pay anything, J.C.W.'s individual liability would be limited by the payment schedule. True, the judgement stated that J.C.W. was potentially obligated to pay the whole amount, but this could happen only if the superior court later revised the payment schedule based on proof that "his earning capacity [had] increase[d] significantly".

The judgement in Thompson's case contains no such limitation on his liability. The superior court did not establish a payment schedule for Thompson, but instead left this matter to the Parole Board. As matters stand now, Thompson is jointly and severally liable for the whole amount, and thus he could be ordered to pay more than $33,000 in restitution even though, based on the evidence presented at the sentencing hearing, there is a significant possibility that he is financially unable to meet this obligation. So far, the superior court has ruled only that Thompson has the ability to pay $8000. Under these circumstances, Thompson has not received the procedural right guaranteed by AS 12.55.045(f).

The State points out that if a defendant is later unable to satisfy a restitution obligation imposed at sentencing, the defendant is entitled to ask for a hearing under AS 12.55.051(c). This statute provides that, if the defendant "proves by a preponderance of the evidence that the defendant will be unable [despite] good faith efforts to satisfy the [restitution] order", the sentencing court "shall modify the order so that the defendant can pay the ... restitution through good faith efforts".

But the hearing specified in AS 12.55.051(c) is a remedy that allows a sentencing court to re-examine a previously entered restitution order. It does not supplant a defendant's procedural right under AS 12.55.045(f) to plead financial inability when the sentencing judge is initially determining the amount of restitution.

For these reasons, we VACATE the superior court's restitution order and we REMAND this case to the superior court for reexamination of the restitution issue.

 On remand, the superior court may again make Thompson jointly and severally liable for the entire amount of restitution, but only if (1) the court sets a payment schedule that is based on Thompson's foreseen ability to pay, or (2) the court finds, under AS 12.55.045(f), that Thompson has failed to prove by clear and convincing evidence that he is unable to pay the full amount of the restitution—$33,197.