NOTICE

*The text of this opinion can be corrected before the opinion is published in the* *Pacific* *Reporter.* *Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.us*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

R.C., a minor,

Appellant,

v.

STATE OF ALASKA,

Appellee.

Court of Appeals No. A-12323
Trial Court No. 3AN-14-111 DL

O P I N I O N

No. 2625 — November 23, 2018

Appeal from the Superior Court, Third Judicial District, Anchorage, Kevin M. Saxby, Judge, and Sidney Billingslea, Magistrate Judge.

Appearances: Laurence Blakely, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for the Appellant. Eric A. Ringsmuth, Assistant Attorney General, Office of Criminal Appeals, Anchorage, and Craig W. Richards, Attorney General, Juneau, for the Appellee.

Before: Mannheimer, Chief Judge, Allard, Judge, and Suddock, Superior Court Judge. [*]

Judge ALLARD.

---

[*]    Sitting by assignment made pursuant to Article IV, Section 16 of the Alaska Constitution and Administrative Rule 24(d).

When R.C. was fifteen years old, he and another juvenile started a fire on the playground of an elementary school in Anchorage, causing extensive damage. R.C. returned to the playground later that same day and started another fire by himself.

R.C. admitted his conduct and was adjudicated a delinquent minor. Following a restitution hearing, the court ordered R.C. to pay $159,161.17 in restitution to the school district and its insurance company.

On appeal, R.C. argues that the trial court erred in failing to consider his ability to pay when it ordered this restitution amount. R.C.'s case requires us to resolve a question of statutory interpretation that we discussed (but did not resolve) in *W.S. v. State* — whether AS 12.55.045(g), the statutory provision in Title 12 that prohibits trial courts from considering a criminal defendant's ability to pay when determining the amount of restitution in a criminal case, applies equally to restitution determinations in juvenile court.[1]

For the reasons explained here, we conclude that AS 12.55.045(g)'s prohibition does not apply to juvenile delinquency cases. The trial court was therefore authorized to consider R.C.'s ability to pay when setting the amount of restitution that R.C. would personally be obligated to pay. Because the record does not establish that the trial court understood it could take R.C.'s limited ability to pay into account when determining the amount of restitution that R.C. would owe, we vacate the current restitution judgment, and we remand this case to the trial court for further proceedings consistent with this decision.

---

[1] *W.S. v. State*, 174 P.3d 256, 262-63 (Alaska App. 2008).

*Background facts and prior proceedings*

Early on the morning of July 26, 2014, fifteen-year-old R.C. and his friend, L.G. started a fire on the playground of Willowcrest Elementary School in Anchorage. Later that afternoon, R.C. returned and started a second fire on the playground by himself. Both R.C. and L.G. admitted the charges of attempted third-degree criminal mischief and second-degree criminally negligent burning, and they were adjudicated delinquent minors.[2]

During the restitution proceedings, the State argued that each juvenile (and their respective parents) should be jointly and severally liable for the full amount of damages caused by their actions. The State therefore asked the court to find L.G. and his parents jointly and severally liable for $108,325.92 (the amount of damage caused by the first fire), and to find R.C. and his parents jointly and severally liable for $159,161.17 (the amount of damage caused by both fires).[3]

R.C.'s attorney objected to R.C. being personally liable for the full amount of restitution. The attorney argued, in particular, that R.C. did "not have any savings or the ability to earn any money," and he asserted that restitution should be set at an amount that R.C. could "realistically" pay during his juvenile probationary period. In support of his attorney's argument, R.C. testified at the restitution hearing that he had never held a job before and he was not sure how much money was in his bank account. (It was later determined that the bank account contained around $100.) R.C. indicated that he wanted

---

[2] AS 11.46.482(a)(1) and AS 11.46.430, respectively.

[3] The State actually requested that R.C. and his parents be jointly and severally liable for $159, 179.17. It is unclear how the State reached this total, as the damage from both fires actually totals $159,161.17 ($108,325.92 for the first fire and $50,835.25 for the second). The total restitution is correctly noted in Appellant's opening brief. The restitution judgment lists the damages from each fire separately.

to pay restitution, and he thought he might be able to get a job at Subway. R.C. also indicated that eventually he hoped to work in construction, doing drywall.

Magistrate Judge Sidney Billingslea presided as a master over the restitution hearing. At the conclusion of the hearing, she issued a report and recommendation on restitution for R.C. This report detailed R.C.'s limited assets in a section entitled "Minor's ability to pay." The report also recommended that the superior court order the Department of Law to set up a payment schedule that addressed R.C.'s ability to pay. But the report otherwise adopted the State's proposed restitution orders, and made no adjustment to the amount of restitution that R.C. would personally owe.

The superior court adopted the magistrate judge's recommendation and ordered the full restitution requested by the State.

Thus, under the current restitution order, R.C. is jointly and severally liable with his parents for $159,161.17 in restitution. He also shares joint and several liability with L.G. and L.G.'s parents for $108,325.92 of that amount. Although R.C.'s liability is joint with these other parties, R.C. will remain personally liable for whatever remains to be paid until the full amount is paid.[4] This personal liability will continue into R.C.'s adult life, and when R.C. reaches adulthood the restitution judgment can be enforced through the civil process.[5]

R.C. now appeals, arguing that the trial court erred when it failed to consider his limited ability to pay when setting the amount of restitution R.C. would personally owe. We note that R.C.'s parents filed a separate appeal challenging their

---

[4] *See Thompson v. State*, 64 P.3d 132, 134-35 (Alaska App. 2003) (holding that in situations of joint and several liability, ability to pay has to be analyzed in terms of full amount of potential restitution, not just the portion that defendant would have to pay if accomplice paid his portion).

[5] AS 47.12.170(a).

restitution judgment.  But this appeal was dismissed after R.C.'s parents negotiated a private settlement with the school district for an undisclosed restitution amount.  It is unknown whether L.G. or L.G.'s parents have negotiated similar settlements.  However, for purposes of our analysis here, R.C.'s liability for the full $159,161.17 remains unchanged.[6]

### *The State's waiver arguments*

Before we reach the merits of R.C.'s claim on appeal, we must first address the State's argument that R.C. waived this claim by failing to adequately argue it in the restitution proceedings.

The purpose of the rule requiring parties to preserve an argument in the trial court is to ensure that the trial court has the opportunity to respond to the argument, and to ensure that there is a sufficient legal ruling and factual record to allow meaningful review by the appellate court.[7]

Here, R.C. argued that he did not have the ability to pay the full restitution amount requested by the State, and he requested that restitution be set in an amount that he could realistically be expected to pay.  This same argument was also presented, in more detail, in his co-defendant L.G.'s brief.  L.G.'s attorney also raised many of the same legal arguments raised here.  Although R.C. did not explicitly join L.G.'s "ability to pay" argument, R.C.'s parents did.  Moreover, the magistrate judge issued nearly identical restitution reports for R.C. and L.G., documenting their assets in sections entitled "Minor's ability to pay."  Given all this, we conclude that the trial court had

---

[6]  *See Thompson*, 64 P.3d at 134-35.

[7]  *Moreno v. State*, 341 P.3d 1134, 1139 (Alaska 2015); *see also Pierce v. State*, 261 P.3d 428, 433 (Alaska App. 2011).

adequate notice of the arguments that R.C. now raises in this appeal, and there is a sufficient record for us to meaningfully review this question of law.

The State also argues that we should reject R.C.'s claim under the doctrine of invited error. We find no merit to this argument. The State's invited error argument is based on one sentence in R.C.'s opposition to the State's restitution memorandum, in which R.C. stated that "suitable restitution" for purposes of the juvenile delinquency statutes "is essentially the restitution imposed in adult criminal cases." As we have previously emphasized, the invited error doctrine only comes into play "when the trial court takes erroneous action at the request of the party claiming error on appeal."[8] From our review of the restitution record, it is apparent that the court did not interpret this sentence in R.C.'s pleading as a concession by R.C. that his ability to pay could not be considered in determining the amount of restitution. The invited error doctrine is therefore inapplicable.

Lastly, the State argues that R.C.'s claim is moot because (according to the State) the court *did* properly consider R.C.'s ability to pay in setting the restitution amount. The State points out that the magistrate judge was clearly aware of R.C.'s limited ability to pay because she documented R.C.'s limited earning potential in her report, and because she recommended that payment schedules be set up for each party in accordance with their individual ability to pay.

But the question before us in this appeal is whether the trial court had the authority to take into account R.C.'s limited financial resources when setting the *amount* of restitution that R.C. would personally owe, not just how that limited ability to pay

---

[8] *Frankson v. State*, 282 P.3d 1271, 1273 (Alaska App. 2012); *see also Muller v. State*, 478 P.2d 822, 828 (Alaska 1971).

should impact his payment schedule.[9] We previously addressed this question in *W.S. v. State*, a decision from 2008.[10] However, in that case, we concluded that we did not need to resolve this question of statutory interpretation because the restitution at issue in *W.S.* — $3,185 — was well within the minor's ability to pay.[11]

The same cannot be said of the restitution amount in R.C.'s case. Here, the restitution amount is $159.161.17, far above what R.C. could ever realistically be expected to pay in the discernible future given the evidence R.C. submitted regarding his financial status and limited future earning potential. Accordingly, we do not find the question of whether the trial court has any authority to reduce this amount based on R.C.'s demonstrated inability to pay a moot question.

*Why we conclude that the statutory prohibition against considering a criminal defendant's ability to pay does not apply to restitution judgments in juvenile delinquency cases*

When we interpret a statute, our task is "to ascertain the legislature's intent and then to construe the statute so as to implement that intent."[12] To ascertain that intent, we are required to look at the plain meaning of the statute's language, its legislative

---

[9] *See Hodges v. State*, 158 P.3d 864, 866 (Alaska App. 2007) (upholding constitutionality of AS 12.55.045(g)'s prohibition against considering a criminal defendant's ability to pay when assessing the amount of restitution in a criminal case but emphasizing that the court must still consider defendant's ability to pay when determining the payment schedules).

[10] *W.S. v. State*, 174 P.3d 256, 258 (Alaska App. 2008).

[11] *Id.* at 258, 264.

[12] *Williams v. State*, 2015 WL 4599554, at *3 (Alaska App. July 29, 2015) (unpublished) (citing *Y.J. v. State*, 130 P.3d 954, 959 (Alaska App. 2006)).

history, and its purpose.[13]  Moreover, where there is an ambiguity in the definition of a word or phrase, "Alaska courts apply a sliding scale approach to statutory interpretation, which considers the legislative history of a statute and whether that history reveals a legislative intent and meaning contrary to the plain meaning of the statute."[14]

Chapter AS 12.55 governs sentencing in criminal proceedings in Alaska. Chapter AS 47.12 governs juvenile delinquency proceedings.  Alaska Statute 12.55.-045(g) declares, "The court may not, in ordering the amount of restitution, consider the defendant's ability to pay."  This prohibition was enacted in 2004, and it has since been upheld as constitutional by this Court.[15]  Prior to the enactment of this provision, Chapter 12.55 permitted courts to consider a defendant's ability to pay when setting the amount of restitution in certain situations.[16]

There is no provision equivalent to AS 12.55.045(g) in AS 47.12.  Instead, AS 47.12.120(b)(4) provides that a court shall order a minor and the minor's parents to make "suitable restitution" following the adjudication of a minor as delinquent.  The term "suitable restitution" is not defined in the statute.  However, there is some statutory guidance regarding how "suitable restitution" should be determined in this context.

---

[13]  *ARCTEC Servs. v. Cummings*, 295 P.3d 916, 920 (Alaska 2013).

[14]  *Liddicoat v. State*, 268 P.3d 355, 360 (Alaska App. 2011).

[15]  AS 12.55.045(g), *as amended by* SLA 2004, ch. 17, § 3; *Hodges v. State*, 158 P.3d 864 (Alaska App. 2007).

[16]  *See* former AS 12.55.045(f) (pre-2004 versions).  From 2000 until repealed in 2004, the statutory provision read:

> If a court proposes to order a defendant to pay restitution under this section of more than $5,000, and the defendant's sentence includes a period of unsuspended incarceration exceeding 90 days, the court may take into account at the time of sentencing the defendant's present and future ability to pay the restitution proposed.

Under AS 47.12.120(b)(4)(A), "the court may require the minor to use the services of a community dispute resolution center that has been recognized by the commissioner under AS 47.12.450(b) to resolve any dispute between the minor and the victim of the minor's offense as to *the amount of* or manner of payment of the restitution." (Emphasis added). Similarly, under AS 47.12.120(b)(4)(C), the court has the authority to obtain financial information from the minor and the minor's parents "for the purpose of establishing *the amount of* restitution or enforcing an order of restitution." (Emphasis added).

Thus, the plain language of AS 47.12 suggests that, unlike in criminal cases, the legislature expects courts to consider a minor's ability to pay when determining the amount of restitution in a juvenile case.

This interpretation is supported by the legislative history that accompanied the various legislative changes to AS 47.12.120(b)(4) and AS 12.55.045(g) over the last three decades. Prior to 1988, Alaska law required trial courts to affirmatively inquire into a defendant's ability to pay when setting restitution in a criminal case.[17] The public policy behind this rule was addressed in *Karr v. State*.[18] In *Karr*, the Alaska Supreme Court held that a defendant's ability to pay restitution should be taken into account at the initial sentencing hearing, not just at a later requested hearing or probation revocation where the defendant asserted their inability to meet the restitution obligation.[19] The Alaska Supreme Court explained its reasoning as follows:

---

[17] Former AS 12.55.045(a) (pre-1988 version) required sentencing judges to "take into account the financial resources of the defendant and the nature of the burden its payment will impose" in ordering restitution.

[18] *Karr v. State*, 686 P.2d 1192, 1197 (Alaska 1984).

[19] *Id.* at 1196-97.

Restitution should not only compensate the victim for the harm inflicted by the offender, but should further the rehabilitation of the offender. If restitution is ordered in an amount that is clearly impossible for the offender to pay, the offender's rehabilitation will be inhibited and not furthered. If the offender is haled into court for nonpayment of restitution under AS 12.55.051(a), or if the offender petitions the court under AS 12.55.051(c) to avoid this sanction, his reintegration into society will be disrupted. Also, an offender might simply give up and make no payments at all if the restitution ordered is clearly impossible to pay.[20]

Thus, restitution orders were viewed as serving the dual purposes of compensating the victim and furthering the rehabilitation of the offender. These two goals were traditionally viewed as mutually reinforcing. Paying restitution was seen as helpful to the victim and to the rehabilitative process, while setting restitution above what could ever be paid was seen as detrimental to the rehabilitative process without providing any additional advantage to the victim, who cannot recover restitution that a defendant cannot pay.[21] As the California Court of Appeal noted in *People v. Kay*: "to subject a defendant to a judgment which he cannot pay and has no reasonable prospect of paying ... is of little use to the victim of the crime, and is apt to be either frustrating to a repentant probationer or perversely satisfying to a rebellious one."[22]

---

[20] *Id.* at 1197; *see also Paroline v. United States*, 572 U.S. 434, 453-54 (2014) (explaining that, "aside from the manifest procedural differences between criminal sentencing and civil tort lawsuits," restitution serves different purposes than the purposes of tort law, for example, as "an effective rehabilitative penalty" (quoting *Kelly v. Robinson*, 479 U.S. 36, 49 n.10 (1986))).

[21] *Kelly*, 479 U.S. at 49 n.10 (citing Note, *Victim Restitution in the Criminal Process: A Procedural Analysis*, 97 Harv. L. Rev. 931, 937-41 (1984)).

[22] *People v. Kay*, 36 Cal.App.3d 759, 763, 111 Cal.Rptr. 894, 896 (Cal. App. 1973),

(continued...)

This same reasoning is evident in a 1994 decision by this Court, *J.C.W. v. State*. In *J.C.W.*, we held that trial courts were required to consider a minor's ability to pay before determining the amount of "suitable restitution" in a juvenile delinquency case.[23] We based this decision, in large part, on the fact that, at that time, the criminal code still required sentencing courts to inquire into a defendant's ability to pay when setting restitution.[24] We also noted that other states appeared to require inquiry into earning capacity in delinquency cases and to prohibit restitution orders exceeding a minor's ability to pay.[25]

By the time *J.C.W.* was issued, the Alaska legislature had amended Chapter 12.55 to partially restrict a trial court's consideration of an adult defendant's ability to pay when setting the amount of restitution.[26] We noted this legislative change in *J.C.W.*,

---

[22] (...continued)
*quoted in Karr*, 686 P.2d at 1197 n.14.

[23] *J.C.W. v. State*, 880 P.2d 1067, 1072 (Alaska App. 1994).

[24] *Id.*

[25] *Id.* A review of current juvenile delinquency codes in other states indicates that there are at least ten states that either cap the amount of restitution that a juvenile can be required to pay, or require the court to affirmatively take a juvenile's ability to pay into account when setting the amount of restitution in a juvenile case. *See, e.g.*, Conn. Gen. Stat. Ann. § 46b-140(d) (ability to pay); Fla. Stat. Ann. § 985.437(2) (ability to pay); Md. Code Ann., Crim. Proc. § 11-604(b) (cap of $10,000); N.J. Stat. Ann. § 2A:4A-43(b)(9) (ability to pay); N.Y. Fam. Ct. Act § 353.6 (cap of $1500); *In re Laurence S.*, 742 N.W.2d 484 (Neb. 2007) (ability to pay); *see also* S.D. Codified Laws § 26-8B-6(4); *In re M.D.D.*, 774 N.W.2d 793 (S.D. 2009) (juvenile bears the burden of raising inability to pay). Additionally, a substantial number of states authorize courts to impose non-financial performance of restitution in lieu of financial restitution, such as through community service. *See, e.g.*, 705 Ill. Comp. Stat. Ann. 405/5-710(4); Kan. Stat. Ann. § 38-2361(d)(1); Mont. Code Ann. § 41-5-103(35).

[26] *Compare* former AS 12.55.045(a) (1991 version) *with* former AS 12.55.045(a), (f),
(continued...)

but we also made clear that we expressed no view "on whether this restriction would affect juvenile delinquency proceedings."[27]  In the years since *J.C.W.*, the legislature continued to amend AS 12.55 to further restrict a trial court's consideration of a criminal defendant's ability to pay when setting restitution amounts in criminal cases.[28]  But, for the most part, the legislature did not make the parallel changes to the statutes that govern restitution judgments in juvenile delinquency cases.

The substantive changes to the statutory provisions that govern restitution in juvenile cases occurred in 1996, 1998, 2001, and 2002.  In 1996, the Alaska legislature enacted AS 47.12.120(b)(4), which was nearly identical to former AS 47.10.-080(b)(4).[29]  The legislature specifically retained the term "suitable restitution" for juvenile delinquency cases — a term that does not appear in the criminal code.  In 1998, the legislature added language permitting a court to require a minor to use the services of a community dispute resolution center to resolve any dispute between the minor and the victim "as to the amount of or manner of payment of the restitution."[30]  In 2001 and 2002 the legislature amended both the criminal code and the juvenile code to address how restitution judgments become executable as civil judgments once the offender has finished his or her probation.[31]

---

[26]  (...continued)
(g) (1992 version).

[27]  *J.C.W.*, 880 P.2d at 1072 n.7.

[28]  *See, e.g.*, SLA 2004, ch. 17 § 3; SLA 2001, ch. 92 §10; SLA 1992, ch. 71 §§ 3, 4.

[29]  SLA 1996, ch. 59, § 46.

[30]  SLA 1998, ch. 108, § 2.

[31]  SLA 2001, ch. 92, §§ 10, 37; SLA 2002, ch. 23, §§ 1, 4.

In 2002, the legislature also amended AS 47.12.120(b)(4) to add subsection (C).[32]  Subsection (C) provides, in relevant part:

> [A]t the request of the department, the Department of Law, the victims' advocate, or on its own motion, the court shall, at any time, order the minor and the minor's parent, if applicable, to submit financial information on a form approved by the Alaska Court System to the court, the department, and the Department of Law for the purpose of *establishing the amount of restitution* or enforcing an order of restitution under AS 47.12.170.  (Emphasis added).

The legislative history that accompanied the enactment of this provision makes clear that the legislature intended to streamline the restitution process in juvenile cases and to require full financial disclosures from the minor and the minor's parents only in those cases where there were legitimate concerns that the restitution amount was beyond what either could pay.[33]

Subsection (C) was an addition to House Bill 297, a 2002 legislative bill that primarily dealt with statutory aggravating factors in criminal cases.  This amendment to the juvenile code was included as one of several "non-controversial" amendments to the restitution statutes in Title 12 and Title 47.[34]  A staff member to Rep. Kevin Meyer (the sponsor of the bill) explained the purpose of AS 47.12.120(b)(4)(C) as follows:

> Current law requires juveniles and parents to submit full financial statements when restitution is being decided.  This amendment will require full financial statements only in cases where one party requests them, that being the Department of

---

[32]  SLA 2002, ch. 23, § 3.

[33]  *See, e.g.*, Minutes of Senate Rules Comm., House Bill 297, statements of Lorali Carter, staff to Rep. Kevin Meyer (Apr. 23, 2002).

[34]  *See* Minutes of Senate Rules Comm., House Bill 297 (Apr. 23, 2002).

> Law, the court, or the defendant. Full financial statements, in most cases, are usually unnecessary if the amount of the restitution is comparable to the permanent fund dividend. If damage is in the tens of thousands, one of those parties would likely request full financial disclosure.[35]

Thus, as of 2002, it appears that the legislature expected courts to continue to consider a minor's ability to pay when setting restitution amounts that would likely exceed the minor's ability to pay, despite the additional restrictions that the legislature had placed on considerations of ability to pay in adult criminal cases.

The same legislative intent can also be seen in the 2004 legislative history that accompanied the enactment of AS 12.55.045(g), the statutory provision that now expressly prohibits trial courts from considering a defendant's ability to pay when setting the amount of restitution in a criminal case. As part of the same legislative bill (House Bill 357), the legislature amended AS 47.12, but the legislature did not make any amendments to AS 47.12 that would have paralleled the statutory prohibition contained in AS 12.55.045(g).[36]

Instead, a review of the 2004 legislative history indicates that the legislature expected that juvenile courts would continue to consider a minor's ability to pay when setting restitution amounts in juvenile cases. During the debate on House Bill 357, the members of the House Judiciary Committee considered amending AS 47.12.120(b)(4) to explicitly authorize courts to take into consideration a delinquent minor's ability to pay past the age of nineteen (the age at which the juvenile court loses jurisdiction over a minor). This amendment to House Bill 357 was ultimately rejected because the legislators were reassured that courts "already had the authority to take a minor's long-

---

[35] Minutes of Senate Rules Comm., House Bill 297, statements of Lorali Carter, staff to Rep. Kevin Meyer (Apr. 23, 2002).

[36] SLA 2004, ch. 17, §§ 3, 6; *compare* AS 12.55.045(g) *with* AS 47.12.120(b)(4).

term ability to pay into account."[37] As we previously observed in *W.S. v. State*, this legislative history strongly suggests that the 2004 legislature intended to retain the authority of courts to consider a minor's ability to pay in establishing the amount of restitution, while simultaneously prohibiting consideration of this factor in setting the restitution amount for adult offenders.[38]

Despite this legislative history, the State takes the position that the Alaska legislature intended courts to treat adult offenders and juvenile offenders the same, and that the legislature intended the same prohibition against considering ability to pay to apply equally to both. In support of this claim, the State points to the Alaska Constitution, which grants victims the right to receive "restitution from the accused."[39] The State argues that if the drafters of this constitutional provision had intended a victim's right to restitution to be limited by an offender's ability to pay, the drafters would have included that limitation in the text of the provision.

We are unpersuaded by this argument. A victim's right to restitution was added to the Alaska Constitution in 1994 as part of a larger victims' right amendment. At that time, the criminal code still permitted courts to consider an adult offender's ability to pay when setting the amount of restitution. It was not until 2004 that the Alaska legislature amended AS 12.55.045(g) to prohibit consideration of a defendant's ability to pay in criminal cases. Thus, contrary to the State's claim, there is nothing to suggest that a victim's constitutional right to restitution was seen as incompatible with setting restitution at an amount that the defendant could actually pay. Indeed, as already

---

[37] *See W.S. v. State*, 174 P.3d 256, 263 (Alaska App. 2008) (citing Minutes of House Judiciary Comm., House Bill 357 (Feb. 9, 2004)).

[38] *W.S.*, 174 P.3d at 263.

[39] Alaska Const. art. I, § 24.

noted, as a purely practical matter, a victim cannot recover restitution that an offender will never be able to pay.

The State's briefing also relies on AS 47.12.010(b)(12), which states that one of the purposes of AS 47.12 is to "ensure that victims ... of crimes committed by juveniles are afforded the same rights as victims ... of crimes committed by adults." The State argues that this provision requires courts to apply the prohibition contained in AS 12.55.045(g) to juvenile delinquency cases. We disagree. Alaska Statute 47.12.010(b)(12) was added to AS 47.12 in 1998, as part of a comprehensive revision of the juvenile delinquency code that began in 1996.[40] The goal of this larger revision was to create a "balanced" juvenile justice system.[41] In accordance with this goal, the legislature announced multiple purposes for the juvenile justice system, demonstrating an intent to balance the rehabilitative needs of juvenile offenders with the rights of crime victims.[42] At the time this revision was enacted, the law was clear that courts were required to consider a minor's ability to pay when ordering restitution in a delinquency proceeding.[43] There is nothing in the 1996 legislation or in any of the subsequent amendments to AS 47.12 to suggest that the legislature intended to change the law allowing consideration of a minor's ability to pay. Nor is there anything in the legislative history to suggest that the legislature viewed considering a juvenile's ability to pay as incompatible with protecting a crime victim's right to restitution.

---

[40]   *See* Minutes of House Health, Education and Social Services Standing Comm., House Bill 387, statement by Rep. Pete Kelly, bill sponsor (Feb. 22, 1996).

[41]   *See id.*; AS 47.12.010(a).

[42]   AS 47.12.010(b).

[43]   *See J.C.W. v. State*, 880 P.2d 1067, 1072 (Alaska App. 1994).

As already mentioned, when we interpret a statute, our task is "to ascertain the legislature's intent and then to construe the statute so as to implement that intent."[44] Here, the plain language of the relevant statutes, the accompanying legislative history, and the underlying purposes of the juvenile justice system indicate that the legislature did not intend to prohibit courts from considering a juvenile's ability to pay when setting restitution amounts in juvenile cases. The courts are therefore authorized to consider all relevant factors when setting restitution orders in juvenile cases, including but not limited to the minor's ability to pay, the detrimental effect of setting restitution at an amount beyond what the minor could ever realistically be expected to pay, and a victim's constitutional right to restitution. In cases such as the present one, where the minor affirmatively presents evidence of inability to pay and the amount of damages is substantially beyond what could be paid anytime in the foreseeable future, the court has the responsibility to take the minor's limited ability to pay into account when setting the amount of restitution that the minor will personally be required to pay.[45]

Because the trial court does not appear to have recognized that it had this responsibility in the current case, we vacate the restitution order entered against R.C. and we remand this case to the trial court for further proceedings consistent with this decision.

---

[44] *Williams v. State*, 2015 WL 4599554, at *3 (Alaska App. July 29, 2015) (unpublished) (citing *Y.J. v. State*, 130 P.3d 954, 959 (Alaska App. 2006)).

[45] *Contrast W.S. v. State*, 174 P.3d 256, 263 (Alaska App. 2008) (concluding that any error in failing to consider a minor's ability to pay is harmless in a case where restitution could likely be paid through the minor's permanent fund dividends); *see also* AS 47.12.120(b)(4)(C) (authorizing court to obtain financial information from a minor and a minor's parents "for the purpose of reestablishing the amount of restitution or enforcing an order of restitution" in a juvenile case); AS 47.12.120(b)(4)(A) (authorizing use of community dispute resolution centers to resolve disputes about the amount of restitution and/or manner of payment).

*Conclusion*

The restitution judgment against R.C. is VACATED and this case is REMANDED to the trial court for further proceedings consistent with this decision.