**Diana L. KARR, Appellant/Petitioner,**

v.

**STATE of Alaska, Appellee/Respondent.**

**No. 7011.**

Supreme Court of Alaska.

July 13, 1984.

---

Mary E. Greene, Asst. Public Defender, Fairbanks and Dana Fabe, Public Defender, Anchorage, for appellant/petitioner.

Carol Greenberg, Asst. Dist. Atty. and Harry L. Davis, Dist. Atty., Fairbanks, and Norman C. Gorsuch, Atty. Gen., Juneau, for appellee/respondent.

Before BURKE, C.J., and RABINOWITZ, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

MOORE, Justice.

Diana Karr was convicted of embezzling over $356,000 from her employer. She was given a ten year sentence with five years suspended and ordered to pay $300,000 in restitution. Karr appeals the sentence as excessive. She further appeals the restitution order on the grounds that her ability to pay was not considered.

Diana Karr began working as a receptionist for Meyeres Real Estate, Inc. in

1975 and eventually became the personal secretary of Bud Meyeres, the owner of the business. Between January, 1979 and December, 1981 Karr used her position to embezzle at least $356,000 from Meyeres Real Estate.[1] Karr perpetrated the thefts by altering checks, issuing unauthorized checks and directly stealing cash.

Most of the embezzled money was used to subsidize Karr's husband's failing construction business. Karr stated that she intended to pay the money back as soon as her husband's business made a profit. The embezzlements from Meyeres Real Estate had a damaging effect on the business and on Mr. Meyeres himself. Meyeres stated that as a result of the financial setback, he will be unable to retire in the near future.

The embezzlements were eventually discovered when the Karrs went on vacation. Mrs. Karr admitted her guilt to the officers investigating the crime. Karr was charged with one count of theft in the first degree[2] for the money converted after January 1, 1980 and one count of embezzlement by an employee[3] for funds misappropriated before January 1, 1980. Two counts were charged because the statute was changed in 1980, but the crime was treated as one continuing offense. Karr pleaded nolo contendere to the charges.

Judge James R. Blair sentenced Karr to serve ten years with five years suspended. Karr was further ordered to pay restitution of $300,000. Karr appealed the sentence and the restitution order to the Court of Appeals and that court affirmed both, 660 P.2d 450 (Alaska App.1983). On a petition for hearing to this court, Karr asserts that the sentence imposed was excessive and contends that the restitution was imposed in violation of AS 12.55.045(a) because the judge did not consider her ability to pay restitution.

I.

The standards under which sentences are to be reviewed were established in *State v. Chaney,* 477 P.2d 441 (Alaska 1970). Under *Chaney,* inquiries into a sentence should determine the following objectives: (1) rehabilitation of the offender; (2) protection of society from future criminal conduct of the offender; (3) community condemnation[4] or reaffirmation of societal norms for the purpose of maintaining respect for these norms; and (4) deterrence of members of society with tendencies toward similar criminal behavior. 477 P.2d at 444. Any portion of the sentence that is suspended is to be weighed in determining whether a sentence is excessive; however, suspended time is a less important consideration than non-suspended time. *Leuch v. State,* 633 P.2d 1006, 1010 (Alaska 1981). With these considerations in mind, a sentence is excessive only when it is clearly mistaken. *McClain v. State,* 519 P.2d 811 (Alaska 1974).

Applying the *Chaney* criteria to this case compels a conclusion that the sentence imposed is not excessive. Karr is thirty-

---

1. In addition to $356,000 of documented thefts Karr stole an unknown amount of cash.

2. AS 11.46.120 states:
 (a) A person commits the crime of theft in the first degree if he commits theft as defined in § 100 of this chapter and the value of the property or service is $25,000 or more.
 (b) theft in the first degree is a class B felony.

3. Former AS 11.20.280 provided:
 Embezzlement by employee or servant. An officer, agent, clerk, employee, or servant who embezzles or fraudulently converts to his own use, or takes or secretes with intent to embezzle or fraudulently convert to his own use, money, property, or thing of another

which may be the subject of larceny, and which has come into his possession or is under his care by virtue of his employment is guilty of embezzlement. If the property embezzled exceeds $100 in value, a person guilty of embezzlement is punishable by imprisonment in the penitentiary for not less than one year nor more than 10 years. If the property embezzled does not exceed the value of $100, a person guilty of embezzlement is punishable by imprisonment in a jail for not less than one month nor more than one year, or by a fine of not less than $25 nor more than $100.

4. This is to be distinguished from retribution which is an impermissible consideration in sentencing. *Leuch v. State,* 633 P.2d 1006, 1012 (Alaska 1981).

four years old, married, and the mother of two. She has no criminal record and the record indicates that, except for the thefts from Meyeres Real Estate, she has led a responsible life. The sentence imposed is not required for furtherance of the first two *Chaney* goals: rehabilitation and protection of the public. Karr's sentence, however, facilitates the last two *Chaney* goals: reaffirmation of societal norms and deterrence.

 The superior court judge stated that he did not "see any way that the court system can send a message to the community that you can steal hundreds of thousands of dollars and not get a substantial sentence. If a court does that then the whole criminal justice system ... loses credibility," because societal norms are not maintained. We agree that a substantial sentence is imperative in a case such as this in order to maintain the integrity of the criminal justice system. Additionally, the degree of harm inflicted upon the victim is a consideration properly included within the context of the community condemnation factor. *Leuch v. State*, 633 P.2d at 1013. Bud Meyeres, in his late sixties, has suffered a severe financial setback as a result of the thefts. Although he may be able to salvage his real estate business, his plans for retirement have been severely hampered, if not eliminated, as a result of Karr's embezzlements.

The fourth *Chaney* criterion, deterrence, is furthered by the sentence imposed in this case. We have stated that " 'white collar' crimes must be taken seriously and that sophisticated schemes to defraud should be deterred." *Fields v. State*, 629 P.2d 46, 53

(Alaska 1981). The amount of money stolen here was so large that unless a substantial sentence is imposed on Karr, it is likely that others would be tempted to perpetrate a similar crime. We conclude that under the *Chaney* criteria the sentence imposed in this case is not clearly mistaken.

Karr argues that the sentence imposed violates sentencing standards established by this court in *Leuch v. State*, 633 P.2d 1006, 1013–14 (Alaska 1981), and by the Court of Appeals in *Austin v. State*, 627 P.2d 657 (Alaska App.1981). In *Leuch* we stated that probation in combination with restitution is the appropriate sentence when the crime is against property, and there is no indication that such a sentence would not protect the public, deter the offender, and further the offender's rehabilitation. 633 P.2d at 1013. The Court of Appeals in *Austin* stated that "normally a first offender should receive a more favorable sentence that the presumptive sentence for a second offender." 627 P.2d at 657–8. The sentence imposed upon Karr conflicts with both these statements.[5] We noted in *Leuch* that the *Leuch* rule is not a "hard and fast rule" and should not be applied if other "factors militate against it." 633 P.2d at 1013–14. In *Austin* the court stated that the *Austin* rule should only be violated in "an exceptional case." 627 P.2d at 658.

The magnitude and manner of the theft in this case is so exceptional that the statements in *Leuch* and *Austin* are not applicable here. Karr embezzled over $356,000. This dwarfs the amounts stolen of $65,000,[6] $25,000[7] and $6,500[8] in similar offenses

5. Karr's ten year sentence with five years suspended violates the court's statement in *Austin* because the presumptive sentence for a Class B felony, which Karr was convicted of, is four years if the offense is a *second* felony conviction. AS 12.55.125(d)(1).

6. In *Amidon v. State*, 565 P.2d 1248 (Alaska 1977), we held that three year sentences for two first offenders convicted of embezzling $65,000 from one of the offender's grandmother should be reduced to a sentence not in excess of one year.

7. In *Fields v. State*, 629 P.2d 46 (Alaska 1981), we reversed a nine year sentence with four years suspended and held that a sentence should not exceed six years with three years suspended. Fields, who had no significant criminal record, had received about $25,500 through fraudulent sales of securities.

8. In *Huff v. State*, 598 P.2d 928 (Alaska 1979), the defendant was a first offender who used his position as a real estate salesman to embezzle $6,500 from a client. We upheld the three year sentence for embezzlement but reduced a five

where the court has reviewed the sentences imposed. An additional distinction between this case and previous cases reviewed by this court for excessive sentencing is the length of time over which the thefts occurred. Karr perpetrated more than fifty thefts over a two year period.[9] This makes Karr's crime a more egregious one because over these two years she viewed the devastating effects her thefts were causing Meyeres Real Estate and Bud Meyeres himself, without discontinuing them.[10] All these considerations compel the conclusion that the sentence imposed in this case is not clearly mistaken and should be affirmed.

## II.

■ AS 12.55.045(a) provides:

The court may order a defendant convicted of an offense to make restitution as provided in this section or as otherwise authorized by law. In determining the amount and method of payment of restitution, the court shall take into account the financial resources of the defendant and the nature of the burden its payment will impose.

year perjury sentence to not more than three years.

9. *Huff* and *Amidon* involved one-time offenses and the offense in *Fields* occurred over three months.

10. In Meyeres' letter to the superior court he stated:
Over the period of Diana's stealing and as pressure and desperation increased, she my most trusted employee and friend was the very person I would most turn to for a mutual searching of the problem, for some kind of answer or change of course, even to closing down before it was too late. I would receive her assurance that it would all work out and on the same day she would make another theft.

11. These statements include:
Well, I think it's [restitution] obviously impossible. She's never going to be able to pay it back, Mr. Madson.

. . . . .

Restitution will be ordered in the amount of $300,000. Another factor that I haven't mentioned and I should have is that it appears to me that restitution in this case is flat out impossible.

. . . . .

The superior court expressly stated three times that it would be impossible for Karr to pay restitution.[11] Diana Karr argues that in light of these findings, the superior court incorrectly ordered her to pay $300,000 in restitution.

The Court of Appeals rejected Karr's argument. The court followed *Brezenoff v. State*, 658 P.2d 1359 (Alaska App.1983), by holding that when lengthy terms of incarceration are imposed restitution can be ordered without an inquiry into the offenders ability to pay. Under this approach, the inquiry into the offender's ability to pay is postponed until after the offender is released. *Brezenoff*, 658 P.2d at 1364. At this point, the inquiry into the offender's ability to pay is performed either when the offender petitions the court to modify the restitution order pursuant to AS 12.55.051(c) [12] or when the offender is ordered to show cause for nonpayment of the restitution order pursuant to AS 12.55.-051(a).[13]

We agree with Karr that the initial sentencing is the appropriate time at which an inquiry into the offender's ability to pay

That's the amount I'm ordering and I frankly don't think it makes much difference if I say $300, 200 or 100. I don't think Mr. Meyeres will ever get (indiscernible).

12. AS 12.55.051 Enforcement of Fines and restitution provides:
(c) Pursuant to a petition filed by a defendant who has been sentenced to pay a fine or restitution or an installment, the court, upon a finding of inability to pay, may order modification of the fine or restitution, subject to conditions the court finds appropriate.

13. AS 12.55.051(a) provides, in pertinent part:
If the defendant defaults in the payment of a fine or any installment or of restitution or any installment, the court may order the defendant to show cause why he should not be sentenced to imprisonment for nonpayment. If the court finds by a preponderance of the evidence that the default was attributable to an intentional refusal or failure to make a good faith effort to pay the fine or restitution, the court may order the defendant imprisoned until the order of the court is satisfied.

must be performed. AS 12.55.045(a) requires sentencing judges to "take into account the financial resources of the defendant and the nature of the burden its payment will impose" in ordering restitution. The opportunity provided by AS 12.55.051 for the court to later modify a restitution order does not replace this legislative mandate. The legislative commentary to AS 12.55.045(a) supports this conclusion by stating that AS 12.55.045(a) "requires the court to consider the defendant's financial resources in *setting* restitution." 2 Senate Journal 151 (1978). (Emphasis added).

There are policy considerations that militate against the approach adopted by the Court of Appeals in *Brezenoff.* Restitution should not only compensate the victim for the harm inflicted by the offender, but should further the rehabilitation of the offender. If restitution is ordered in an amount that is clearly impossible for the offender to pay, the offender's rehabilitation will be inhibited and not furthered. If the offender is haled into court for nonpayment of restitution under AS 12.55.051(a), or if the offender petitions the court under AS 12.55.051(c) to avoid this sanction, his reintegration into society will be disrupted. Also, an offender might simply give up and make no payments at all if the restitution ordered is clearly impossible to pay. This could result in the offender's incarceration under AS 12.55.051(a), or in his fleeing the jurisdiction to avoid this sanction, neither of which would further the dual goals behind restitution.[14]

■ In this case, the sentencing judge found that full restitution would be impossible. Instead of making an inquiry into what amount the defendant reasonably could be expected to pay, the judge stated that "all we can do is get as much back as we can …." and ordered restitution of $300,000. This violates AS 12.55.045(a). On remand the superior court should make a serious inquiry into Karr's ability to pay restitution and order restitution accordingly.[15] This inquiry should include an analysis of any assets that Karr presently owns, her past earning capacity and potential in the future as a wage earner, based on her experience, training, and any other relevant factors.

AFFIRMED in part, REVERSED in part, and REMANDED.

---

14. In *People v. Kay,* 36 Cal.App.3d 759, 763, 111 Cal.Rptr. 894, 896 (1973), the court stated that "to subject a defendant to a judgment which he cannot pay and has no reasonable prospect of paying … is of little use to the victim of the crime, and is apt to be either frustrating to a repentant probationer or perversely satisfying to a rebellious one." *See also* Annot., 73 A.L. R.3d 1240 (1976), which notes that in many jurisdictions, courts must consider an offender's ability to pay restitution when ordering restitution as a condition of probation, regardless of whether a statute compels this or not.

15. The superior court must decide both the total amount of restitution to be paid and the terms of payment. The probation officer may not be assigned this judicial responsibility. *Brezenoff v. State,* 658 P.2d 1359, 1363–64 (Alaska App. 1983).