*Toney v. State,* 785 P.2d 902, 903 (Alaska App.1990).

**R.I., Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–5130.**

Court of Appeals of Alaska.

May 12, 1995.

---

J. John Franich, Asst. Public Advocate, Fairbanks, and Brant McGee, Public Advocate, Anchorage, for appellant.

D. Rebecca Snow, Asst. Atty. Gen., Fairbanks, and Bruce M. Botelho, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and MANNHEIMER, JJ.

## OPINION

MANNHEIMER, Judge.

R.I. was adjudicated a juvenile delinquent under AS 47.10.080(a). As one of the conditions of his probation, he was ordered to make restitution in the amount of $3,018.83. Later, because of various violations of his probation (including failure to make restitution), the superior court revoked R.I.'s probation and institutionalized him. In addition, the court entered a civil judgement against R.I. (in favor of the victims of his crimes) for the amount of the unpaid restitution.

R.I. appeals this last aspect of the superior court's dispositional order. He contends that the superior court, by entering the civil judgement against him, in effect increased the severity of his sentence and thus violated the double jeopardy clauses of the federal and state constitutions. We asked the parties to brief a related issue: whether the superior court had the authority to convert the unpaid restitution into a civil judgement. After consideration of the supplemental briefing, we now hold that the superior court lacked authority to convert the restitution order into a civil judgement.

The superior court's decision to issue a civil judgement against R.I. was apparently prompted by the fact that the court's jurisdiction over R.I. was about to end.[1] The

---

1. Under AS 47.10.100(a), the superior court's jurisdiction over a juvenile ends when the juve-

court wished to ensure that R.I. eventually paid the restitution, even if payment did not occur until after R.I.'s release from juvenile supervision. However, in attempting to achieve this goal, the court acted beyond its legal powers.

■ In both criminal cases and juvenile delinquency cases, the legislature has authorized the superior court to order a defendant to pay restitution. In criminal prosecutions, a sentencing court can order a convicted defendant to pay restitution either as an independent component of the defendant's sentence, *see* AS 12.55.045(a), or as a condition of the defendant's probation, *see* AS 12.55.100(a)(2). And in juvenile cases, AS 47.10.080(b)(4) authorizes the superior court to order restitution "in lieu of or in addition to" the dispositions authorized by AS 47.10.080(b)(1)–(b)(3).

■ These statutes, however, do not authorize a sentencing court to issue a civil judgement in favor of a crime victim for the amount of damage or loss inflicted by an adult or juvenile defendant.[2] More specifically, no provision of AS 47.10 gives the superior court the authority to enter civil judgement in a juvenile case in favor of the intended recipient of restitution. This lack of statutory authority determines the outcome of R.I.'s appeal.

■ In the realm of criminal law, the Alaska Supreme Court has repeatedly held that legislation, not inherent judicial power, is the source of a court's sentencing authority. The legislature sets the maximum, minimum, and presumptive terms of imprisonment for crimes. *See Nell v. State*, 642 P.2d 1361, 1368 (Alaska App.1982), (citing several Alaska cases "which have explicitly recognized the authority of the legislature in the area of fixing criminal sentences"). The legislature decrees whether a defendant's sen-

tence may be suspended in whole or in part. *Pete v. State*, 379 P.2d 625, 626 (Alaska 1963) (a court has no inherent power to suspend a sentence of imprisonment and place a defendant on probation; such authority must be granted by the legislature). The legislature determines what length of probation may be imposed. *Gonzales v. State*, 608 P.2d 23, 25–26 (Alaska 1980); *Jackson v. State*, 541 P.2d 23, 25 (Alaska 1975) (when a defendant's sentence of imprisonment is suspended and the defendant is placed on probation, the defendant's total period of probation may not exceed the 5–year period specified in AS 12.55.090(c)); *Tiedeman v. State*, 576 P.2d 114, 116 n. 11 (Alaska 1978) (because a different statute (AS 12.55.085(a)) governs probation when a defendant receives a suspended imposition of sentence (SIS), the 5–year limitation does not apply; rather, SIS probation is limited to the same number of years as the maximum sentence of imprisonment for the crime). And, while a court has wide discretion in setting the conditions of a defendant's probation, a court must have legislative authorization before imposing conditions that fundamentally alter a defendant's status as a "probationer" (that is, someone who is released from custody upon his or her promise to abide by certain conditions). *Whittlesey v. State*, 626 P.2d 1066, 1067 (Alaska 1980); *Boyne v. State*, 586 P.2d 1250, 1251 (Alaska 1978) (absent explicit legislative authorization, a court may not impose imprisonment as a condition of probation). *See Brown v. State*, 559 P.2d 107, 110 (Alaska 1977) (because AS 12.55.100(a)(1) authorizes a court to impose a fine as a condition of probation, a sentencing court can order a defendant to pay a fine as a condition of probation even when the underlying crime is punishable by imprisonment only).

■ In juvenile cases, the supreme court has followed the same rule: the superior

---

nile reaches his or her nineteenth birthday (or, with the child's consent, his or her twentieth birthday). *State v. T.M.*, 860 P.2d 1286, 1288 (Alaska App.1993).

**2.** We note that, in criminal prosecutions, the legislature has authorized crime victims to pursue execution upon a restitution order as if it were a civil judgement in their favor. Alaska Statute 12.55.051(d) provides:

The state may enforce payment of a fine and [a] restitution recipient may enforce payment of a restitution order against a defendant under AS 09.35 as if the order were a civil judgment enforceable by execution. This subsection does not limit the authority of the court to enforce fines and orders of restitution to victims.

court's authority to impose particular types of disposition in a juvenile case is granted by and governed by legislation. *In re E.M.D.*, 490 P.2d 658 (Alaska 1971). In *E.M.D.*, the superior court found a minor to be a "child in need of supervision" under former AS 47.10.290(7) (a status that is now termed "child in need of aid" under AS 47.10.010(a)(2)). Based on this finding, the superior court ordered E.M.D. to be institutionalized "in a correctional or detention facility ... until released therefrom upon a showing ... that the minor has completed a program of rehabilitation and has been amenable thereto". *E.M.D.*, 490 P.2d at 659.

The minor appealed, contending that the superior court had exceeded its authority when it ordered her to be institutionalized. E.M.D. argued that the legislature had authorized institutionalization only for delinquent minors, not for children in need of supervision. The supreme court agreed:

> Alaska's pertinent statutory provisions and procedural rules distinguish between categories of children.... Of controlling significance here is that each class or category mandates distinct differences regarding the permissible content of any dispositional order the trial court can enter.
>
> Study of our children's laws leads to the conclusion that the legislature has authorized institutionalization only where the child is found to be a delinquent minor.... [T]he only instance under our children's laws authorizing institutionalization or incarceration is when the child has violated the laws of the state[.] Since the runaway child in the case at bar was found to be a child in need of supervision, not a delinquent minor, no legal basis existed for her incarceration.

*E.M.D.*, 490 P.2d at 659–660.

Attempting to avoid this result, the State in *E.M.D.* argued that the superior court was not bound by the literal terms of AS 47.10. The State contended that, "in light of the legislature's broad policy declaration [that] protection of children is the paramount purpose [of the] laws pertaining to children's courts", the superior court should be deemed to enjoy broad power to fashion dispositions different from, or in addition to, the ones specifically listed in AS 47.10.080. *Id.* at 660. The supreme court rejected this argument:

> [W]e recently held that the benevolent social theory supposedly underlying children's court [legislation] does not furnish justification for dispensing with constitutional safeguards [citing *R.L.R. v. State*, 487 P.2d 27, 30–31 (Alaska 1971) (a child alleged to be a delinquent minor is entitled to a trial by jury) ]. [In] the case at bar, it is equally appropriate to note that notions of benevolent protective policies cannot be used to validate departures from positive law relating to the adjudicative and dispositive phases of children's proceedings.

*E.M.D.*, 490 P.2d at 660.

■ Returning to the present case, no provision of AS 47.10 authorizes the superior court to issue a civil judgement in favor of a crime victim as part of a juvenile disposition. The State attempts to deal with this lack of statutory authority by asserting that, in children's cases, the superior court enjoys broad, inherent power to fashion dispositional orders. The State reasons that there was no need for the legislature to specify the superior court's power to convert a restitution order to a civil judgement in children's cases because the superior court has "broad dispositional discretion" to pursue any mode of enforcing its judgement.

This is essentially the same argument that the supreme court rejected in *E.M.D.*. The superior court does not have unfettered dispositional power in children's cases; rather, the court's authority arises from, and is limited by, statute. The legislation defining the superior court's authority in juvenile cases does not authorize the court to enter civil judgement in favor of a crime victim or convert a previously-entered restitution order into a civil judgement. Because no provision of AS 47.10 confers this power on the superior court, we hold that the superior court lacked the authority to convert the restitution portion of its dispositional order into a civil judgement against R.I..

The State contends that, if the superior court lacks the power to convert its restitution orders to civil judgements, then delin-

quent minors might evade the court's orders "simply by waiting to get too old" for the court to take action against them. Nevertheless, as the State's brief in *E.M.D.* recognized, courts must not exceed their granted powers "even where ... the factual circumstances cry out for a disposition beyond the fingertips of the [sentencing] court". *E.M.D.*, 490 P.2d at 660–61 n. 10.

The contested portion of the superior court's judgement is REVERSED.