Matthew Scott HODGES, Appellant,

v.

STATE of Alaska, Appellee.

No. A–9610.

Court of Appeals of Alaska.

May 25, 2007.

J. Adam Bartlett, Anchorage, for the Appellant.

Diane L. Wendlandt, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and David W. Márquez, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

*OPINION*

MANNHEIMER, Judge.

Under AS 12.55.045(a), a sentencing court must order the defendant to make restitution to the victims of the crime (unless the victims decline restitution). AS 12.55.045(g) directs the court to assess the total amount of restitution without regard to the defendant's ability to pay—although, under AS 12.55.045(c), the court may give the defendant time to pay the restitution, and the court may also allow the defendant to pay the restitution in installments of a specified amount.

In this appeal, the defendant argues that unless a defendant's ability to pay is taken into account when setting the total amount of restitution, the restitution order will violate the defendant's right to due process of law as well as the sentencing goal of rehabilitating the offender.

As we explain here in more detail, we conclude that assessing the total amount of restitution without regard to a defendant's ability to pay does not deprive the defendant of due process of law, nor does it defeat the sentencing goal of reformation, so long as the sentencing judge *does* consider the defendant's ability to pay when the judge sets the schedule and the monetary amount of the defendant's payments toward that restitution obligation. We therefore uphold the constitutionality of AS 12.55.045(g).

*Underlying facts*

Matthew Scott Hodges was convicted of

second-degree theft.[1] As one of the conditions of his probation, Hodges was ordered to pay restitution in an amount to be determined in a separate post-sentencing hearing.

Thereafter, the State submitted a request for restitution in the amount of $86,814.50—the full amount of the victims' loss. Hodges objected to the State's request. He conceded that he should pay restitution, but he argued that it would be unconstitutional for the court to assess the amount of restitution without allowing Hodges to argue and prove that he lacked the financial ability to pay the sum requested by the State.

Hodges acknowledged that AS 12.55.045(g) directs the sentencing court to assess the amount of restitution without regard to the defendant's ability to pay. However, Hodges argued that this statute violated his right to due process of law. *See* Article I, Section 7 of the Alaska Constitution. Hodges also argued that if the court set the amount of restitution without regard to his ability to pay, this would frustrate the sentencing goal of rehabilitation of the offender. *See State v. Chaney*, 477 P.2d 441, 443–44 (Alaska 1970), and Article I, Section 12 of the Alaska Constitution: "Criminal administration shall be based [in part] upon ... the principle of reformation."

On January 10, 2006, Superior Court Judge Philip R. Volland took two actions regarding the question of restitution. As mandated by AS 12.55.045(g), Judge Volland set Hodges's total amount of restitution at $86,814.50–the full amount of the victims' loss. But Judge Volland also issued a written order in which he declared that Hodges's objections to the restitution were premature.

In his order, Judge Volland pointed out that Hodges's restitution hearing had not yet been held, and thus the court had not yet established Hodges's "payment level". (Judge Volland was apparently referring to the money amount and frequency of Hodges's restitution payments.) Because the details of Hodges's payment schedule had not yet been determined, Judge Volland concluded that it was premature for Hodges to argue that he was being ordered to make

restitution payments that were beyond his financial ability. The judge wrote, "At this point, no payment level has been determined, and hence [there is, as yet,] no factual basis [for Hodges's] claim that he cannot meet the proposed restitution payments."

In response, Hodges filed a motion for reconsideration. In this motion, Hodges clarified that his argument did *not* relate to the amount and/or the scheduling of the restitution payments that the court might eventually order. Hodges contended that even if Judge Volland established a schedule of installment payments that Hodges was capable of paying, it was nevertheless unconstitutional for the judge to set the *total* amount of restitution without regard to Hodges's ability to pay that full amount. Judge Volland denied this motion for reconsideration.

*Why we conclude that neither the guarantee of due process nor the principle of reformation is violated when a sentencing court sets the total amount of restitution without regard to the defendant's ability to pay that sum*

In order to assess the constitutionality of subsection (g) of AS 12.55.045 (the subsection that directs a sentencing court to assess the total amount of restitution without regard to the defendant's ability to pay), we must first interpret subsection (c) of the statute—the provision that grants a sentencing judge the authority to allow the defendant to pay the restitution over time, in installments.

Both Judge Volland's ruling in this case and Hodges's request for reconsideration of that ruling appear to be premised on the assumption that, under AS 12.55.045(c), a sentencing judge can (and should) take account of a defendant's ability to pay when the judge sets the payment schedule—*i.e.*, the money amount and the frequency of the defendant's restitution payments.

This reading of subsection (c) is supported both by the overall wording of the statute and the policy behind the statute.

Subsection (g) of the statute forbids a sentencing judge from considering a defendant's ability to pay "[when] ordering the amount of restitution". But it appears that, in fashion-

---

**1.** AS 11.46.130(a)(1) (theft of property valued at   $500 or more).

ing this restriction, the legislature wanted to carry out the policy of making restitution orders the equivalent of a civil judgement entered against the defendant in favor of the victims. Indeed, in subsection (*l*) of AS 12.55.045, the legislature has declared that a sentencing judge's restitution order *is* "a civil judgment for the amount of the restitution", and that this restitution order can be enforced by either the State or the victims themselves "through any procedure authorized by law for the enforcement of a civil judgment". *See also* AS 12.55.051(e)-(f).

In civil litigation, the amount of a defendant's liability is not determined according to the defendant's ability to pay; rather, damages in a civil case are determined according to the plaintiff's loss.[2] Once the amount of liability is determined, there are various legal mechanisms that protect a defendant from immediate or complete enforcement of the judgement, if immediate or complete enforcement would leave the defendant without the resources to live.[3] But the plaintiff is entitled to a judgement for the full amount of their loss.

AS 12.55.045 prescribes a similar rule for restitution orders in criminal cases. Under subsection (g) of this statute, crime victims are entitled to a restitution order that directs the defendant to compensate them for the full amount of their loss. Nevertheless, under subsection (c), a sentencing judge must consider the defendant's ability to pay when structuring the defendant's payment of the restitution.

This view of the matter is confirmed by the companion statute, AS 12.55.051, which deals with the enforcement of restitution orders. Subsection (a) of this statute declares that a defendant can not be punished, either in contempt proceedings or in probation revocation proceedings, for failing to make court-ordered restitution payments "[if] the defendant was unable to pay despite having made continuing good faith efforts". Moreover, subsection (c) of this statute declares that any defendant who has been sentenced to pay restitution "may request a hearing regarding the defendant's ability to pay the ...

restitution at any time that the defendant is required to pay all or a portion of the ... restitution." At this hearing,

> [i]f ... the defendant proves ... that [they] will be unable through good faith efforts to satisfy the order requiring payment of the ... restitution, the court shall modify the order so that the defendant can pay the ... restitution through good faith efforts.

Subsection (c) then adds this clarifying final sentence: "The court may not reduce an order of restitution[,] but [the court] may change the payment schedule."

For these reasons, we interpret AS 12.55.045 to mean (1) that crime victims are entitled to a restitution order that covers their full loss, just as if they had sued and won in civil litigation, even when it is clear that the defendant lacks the financial ability to pay that full amount, but (2) a sentencing judge must consider a defendant's ability to pay when framing the terms under which this restitution obligation will be enforced— *i.e.*, when the judge determines the schedule and the amount of the defendant's payments.

Having interpreted AS 12.55.045 in this manner, we now address Hodges's constitutional arguments.

■ Hodges's first argument is that calculation of the amount of restitution without regard to his ability to pay denies him due process of law. This argument has no merit. There is no violation of due process when, in civil litigation, the amount of a defendant's liability is calculated without regard to the defendant's ability to pay. Likewise, there is no violation of due process when, in criminal litigation, the amount of a defendant's restitution liability is calculated in the same manner.

Due process of law becomes important when the sentencing court establishes how this restitution is to be paid. Due process of law likewise becomes important if the State later claims that the defendant should be punished for failing to make the scheduled payments, or if the defendant later claims

---

**2.** *See* AS 09.17.040.

**3.** *See, e.g.,* AS 09.38.010–030.

that a previously established payment schedule is now beyond the defendant's means. But a defendant's right to due process of law is not infringed when the sentencing court enters a restitution order that covers the full amount of the victim's loss.

■ This leaves Hodges's second argument: his claim that calculation of the amount of restitution without regard to his ability to pay violates the mandate of Article I, Section 12 of the Alaska Constitution—*i.e.*, the principle that penal administration shall be based, in part, on the goal of reforming the offender.

Hodges relies primarily on the Alaska Supreme Court's decision in *Karr v. State*, 686 P.2d 1192 (Alaska 1984). The defendant in *Karr* was found guilty of embezzling over $350,000 from her employer.[4] As part of Karr's sentence, the superior court ordered her to pay restitution of $300,000—even though the sentencing judge "expressly stated three times that it would be impossible for Karr to pay [this amount of restitution]".[5]

Rather than inquiring into the amount or frequency of payments that Karr might reasonably be expected to make, the sentencing judge simply declared that "all we can do is get as much back as we can".[6] The judge added that "[he] frankly [didn't] think it [made] much difference" whether he ordered restitution of $300,000, or $200,000, or even $100,000—because he did not believe that the victim would ever get much money from Karr.[7]

At the time of Karr's sentencing, a previous version of AS 12.55.045 was in effect. That previous version of the statute provided:

> In determining the amount and method of payment of restitution, the [sentencing] court shall take into account the financial resources of the defendant and the nature of the burden [that] payment [of the restitution] will impose.

The supreme court agreed with Karr that, under this statute, it was error for the superior court to order her to pay $300,000 in restitution when it was clear to the superior court that Karr had no prospect of paying this amount.

The supreme court noted that the statute expressly directed a sentencing judge to consider the defendant's financial resources, and the burden that payment of the restitution would place on the defendant, when the judge assessed "the amount and method of payment of restitution".[8] The supreme court concluded that, even though other statutory provisions authorized a sentencing court to modify a previous restitution order, this authority did not exempt the sentencing court from complying with the statutory mandate to consider the defendant's ability to pay when the court initially set the defendant's restitution obligation.[9]

The supreme court then declared that this result, mandated by statute, was also supported by policy:

> Restitution should not only compensate the victim ... but should [also] further the rehabilitation of the offender. If restitution is ordered in an amount that is clearly impossible for the defendant to pay, the offender's rehabilitation will be inhibited and not furthered. If the offender is haled into court for nonpayment of restitution under AS 12.55.051(a), or if the offender petitions the court under AS 12.55.051(c) to avoid this sanction, his reintegration into society will be disrupted. Also, an offender might simply give up and make no payments at all if the restitution ordered is clearly impossible to pay. This could result in the offender's incarceration ... or in his fleeing the jurisdiction to avoid this sanction, neither of which would further the dual goals behind restitution.

*Karr*, 686 P.2d at 1197.

Hodges urges us to read this language broadly—interpreting it to preclude a sen-

---

4. *Karr*, 686 P.2d at 1193.

5. *Id.* at 1196.

6. *Id.* at 1197.

7. *Id.* at 1196 n. 11.

8. *Id.* at 1196–97.

9. *Id.* at 1197.

tencing judge from ordering full restitution unless it affirmatively appears that the defendant is capable of making full restitution. We do not believe that such a broad interpretation of *Karr* is warranted.

To begin with, the precise holding in *Karr* was that the sentencing judge violated the version of AS 12.55.045 that was in effect at the time. That statute has since been changed: it no longer requires a sentencing judge to consider a defendant's ability to pay when the judge assesses the total amount of restitution. In fact, the statute forbids this. Thus, to the extent that *Karr* simply holds that a sentencing judge must obey the statutes governing sentencing, the *Karr* decision does not speak to the situation presented in Hodges's case.

Moreover, we do not believe that the current version of AS 12.55.045 undermines the policy considerations that the supreme court listed in *Karr*.

We note that the former version of AS 12.55.045 (the portion quoted above) differs in only one respect from the current version. The former version of the statute directed a sentencing judge to consider a defendant's ability to pay when assessing "the amount and method of payment of restitution". The current version of the statute directs a sentencing judge to assess the *amount* of restitution without regard to the defendant's ability to pay, but the current version continues to require the sentencing judge to consider the defendant's ability to pay when setting the *method of payment*.

In this way (as we explained above), the restitution statute parallels the remedy that the victim would be entitled to if the victim pursued civil litigation against the defendant—*i.e.*, the right to a judgement for the full amount of the loss, but not the right to collect that judgement in a manner that reduces the defendant to penury.

Under Alaska law, a criminal judgement is normally conclusive evidence of civil liability, regardless of whether that judgement is entered as a result of a trial verdict or a plea of guilty or no contest.[10] Thus, as a practical matter, it would seem to make little difference to the defendant's rehabilitation if the sentencing court assesses the *amount* of restitution without regard to the defendant's ability to pay—because the victim would be entitled to this same result if the victim took the trouble to pursue a civil lawsuit.

Instead, the concerns that the supreme court adverted to in *Karr* (the potential obstacles to rehabilitation that might arise if a defendant were ordered to pay restitution "in an amount that is clearly impossible") come into play most directly when a sentencing court establishes the defendant's *method of payment*—for instance, when the court sets the amount and frequency of the defendant's installment payments. On this point, the current version of AS 12.55.045 is the same as the former version: the sentencing judge must consider the defendant's ability to pay.

For these reasons, we conclude that AS 12.55.045 does not offend the principle of reformation embodied in Article I, Section 12 of the Alaska Constitution.

*Conclusion*

The judgement of the superior court is AFFIRMED.

---

10. *See Burcina v. Ketchikan*, 902 P.2d 817, 822 (Alaska 1995) (holding that "a civil plaintiff is collaterally estopped from relitigating any element of a criminal charge to which he has pled *nolo contendere*"); *Howarth v. Alaska Public Defender Agency*, 925 P.2d 1330, 1333 (Alaska 1996) (holding a former client of the Public Defender Agency who was suing to recover money for alleged malpractice was collaterally estopped from asserting his innocence of a charge to which he had pleaded no contest); *Lashbrook v. Lashbrook*, 957 P.2d 326, 330 n. 2 (Alaska 1998) (holding that a defendant in a child custody dispute was "precluded from challenging the facts which constitute the elements of the [domestic assault and weapons offense] to which he pled no contest").