174 P.3d 256 (2008)
W.S., a minor, Appellant,
v.
STATE of Alaska, Appellee.
No. A-9819.
Court of Appeals of Alaska.
January 11, 2008.
*257 James M. Hackett, Fairbanks, for the Appellant.
Diane L. Wendlandt, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Talis J. Colberg, Attorney General, Juneau, for the Appellee.
Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

OPINION
MANNHEIMER, Judge.
In this appeal, we are asked to construe the provisions of law governing restitution in juvenile delinquency cases.
W.S. was adjudicated a delinquent minor for assaulting a twelve-year-old boy. As explained in more detail below, the superior court ordered W.S. and his parents to pay restitution to the victim's aunt (who was the boy's guardian and physical custodian) and to a mental health counselor who provided counseling services to the victim following the offense. W.S. argues that, in a juvenile delinquency case, the superior court lacks the authority to order restitution payments to anyone except the direct victim of the minor's offense.
In addition, W.S. argues that any restitution obligation imposed by the superior court in a delinquency proceeding should terminate when the court's disposition order is accomplishedi.e., when the term of the minor's institutionalization or probation ends.
Finally, W.S. argues that when the superior court assesses a minor's restitution obligation in a delinquency case, the court is obliged to take into account not only the amount of the victim's loss but also the minor's ability to pay.
For the reasons explained here, we conclude that the superior court had the authority to order restitution to the victim's aunt and to the mental health counselor. We further conclude that W.S.'s obligation to pay this restitution is not extinguished when the minor's term of institutionalization or probation ends. Indeed, under Alaska law, a minor's obligation to pay restitution is not extinguished even when the superior court loses its juvenile jurisdiction over the minorwhich normally occurs when the minor turns nineteen.[1]
*258 With regard to the argument that the superior court is obliged to consider a minor's ability to pay when assessing the amount of restitution, we consider this to be a close question. However, we need not resolve that question in the present case, because the record provides no reason to believe that the amount of restitution ordered in this case is beyond the means of W.S. and his parents.
Underlying facts
W.S. was accused of sexually abusing a ten-year-old boy and a twelve-year-old boy at a youth club facility in Fairbanks. The two victims stated that W.S. had penetrated them anally and had performed or attempted to perform oral sex on them.
Based on these allegations, and also based on an earlier incident in which W.S. broke into a neighbor's home and damaged a window, the State filed a delinquency petition against W.S. This petition was ultimately resolved by a plea agreement.
With respect to the incident involving the two boys, the State dropped the charges involving the younger boy, and the State reduced the charges involving the other boy, Z.L., to one count of fourth-degree assault and one count of harassment.[2] With respect to the unlawful entry into the neighbor's house, W.S. entered an admission to first-degree trespass and fourth-degree criminal mischief. Under the plea agreement, W.S. would be placed on probation, with the terms and conditions to be decided by the superior court.
At the disposition hearing, the superior court accepted the plea agreement and scheduled a later hearing where the State could present evidence on the issue of restitution. Based on the evidence presented at the restitution hearing, the superior court directed W.S. and his parents to pay restitution in the amount of $3,185.
(See AS 47.12.120(b)(4), which directs the superior court to order both the minor and the minor's parents to pay any restitution obligation.)
This restitution of $3,185 included $1,485 to reimburse Z.L.'s aunt (who was his custodian) for the hours she missed from work in order to care for Z.L. following the attack. It also included $1,300 as reimbursement for the costs of professional mental health counseling for Z.L.
Because Z.L.'s aunt could not afford the mental health counselor's normal hourly rate, the counselor agreed to provide the services at half her normal rate. Accordingly, the superior court ordered restitution of $650 to Z.L.'s aunt (for the portion of the fee that the aunt paid) and $650 to the mental health counselor herself (for the remainder of the fee, which was essentially donated).
W.S.'s argument that the superior court had no authority to order restitution in favor of Z.L.'s aunt and the mental health counselor
W.S. argues that, even though the superior court had the authority to order restitution for any loss suffered by Z.L. (the direct victim of the offense), the superior court had no authority to order restitution for the time that Z.L.'s aunt missed from her employment. W.S. further argues that the superior court had no authority to order restitution in favor of Z.L.'s aunt or the mental health counselor for the cost of Z.L.'s mental health counseling.
The superior court clearly had the authority to order restitution in favor of Z.L.'s aunt. In fact, the superior court was obliged to order restitution in favor of the aunt.
Under AS 47.12.120(b)(4), "[if] the [superior] court finds that the minor is delinquent, it shall . . . order the minor and the minor's parent to make suitable restitution". Moreover, subsection (A) of this same statute declares "the court may not refuse to make an order of restitution to benefit the victim of the [delinquent] act".
Z.L.'s aunt qualifies as a "victim" for this purpose. AS 47.12.990(16) declares that the term "victim" has the same meaning in juvenile delinquency proceedings as it does under AS 12.55.185, the statute that defines "victim" for purposes of adult criminal sentencing proceedings. And under AS *259 12.55.185(19)(B), the term "victim" includes not only the direct victim of the unlawful act, but also "a parent, . . . guardian, or custodian" of the direct victim if the direct victim is a minor.
W.S. concedes that Z.L.'s aunt was his physical custodian and primary caretaker during the pertinent time. Moreover, the superior court found that Z.L.'s aunt was effectively Z.L.'s guardianbecause she had a power of attorney authorizing her to make all parental decisions for him. Thus, not only did the superior court have the authority to order restitution in favor of Z.L.'s aunt, but the superior court was obliged to do so.
The remaining question is whether the superior court had the authority to order restitution in favor of the mental health counselor.
W.S. interprets AS 47.12.120(b)(4) as forbidding the superior court from authorizing restitution in favor of anyone who is not a "victim" of the delinquent act as defined in AS 47.12.990 and AS 12.55.185. This is an incorrect reading of the statute.
As we noted earlier, AS 47.12.120(b)(4) declares that the superior court "shall . . . order the minor and the minor's parent to make suitable restitution". In other words, if a minor is found to be delinquent, the superior court is under a duty to order "suitable restitution".
Subsection (A) of this statute then states that, in discharging this duty to order suitable restitution, the superior court "may not refuse to make an order of restitution to benefit the victim of the [delinquent] act". In other words, restitution in favor of the victim is the least that the superior court can do when discharging its more general duty to order "suitable restitution". This statute does not forbid the superior court from ordering restitution in favor of other persons, so long as the restitution falls within the rubric of "suitable restitution".
The delinquency statutes offer no further definition or explanation of "suitable restitution". However, in AS 47.12.010(b)(12), the legislature declared that one of its purposes in enacting the current version of the delinquency laws was to "ensure that [the] victims . . . of crimes committed by juveniles are afforded the same rights as [the] victims . . . of crimes committed by adults".
With respect to court-ordered restitution in adult criminal proceedings, this Court has already held that the "purpose of the restitution statutes is to make full restitution available to all persons who have been injured as a result of criminal behavior, to the greatest extent possible."[3] Because the legislature intended to authorize broad restitution in adult criminal proceedings, and because the legislature intended that the victims of juvenile delinquency should receive the same rights as the victims of adult crimes, we conclude that the phrase "suitable restitution" as used in AS 47.12.120(b)(4) should be interpreted in light of the statutes that govern restitution in adult criminal proceedings, and that "suitable restitution" in delinquency cases presumptively encompasses the types of restitution that are allowed in adult criminal cases.
(Indeed, in the past, this Court has looked to the provisions of Title 12 when interpreting the restitution provisions of the delinquency statutes.[4])
AS 12.55.045(a) authorizes restitution awards to reimburse the cost of mental health counseling in adult criminal cases. This statute says, in relevant part, that a sentencing court "shall . . . order [the] defendant . . . to make restitution":
to a public, private[,] or private nonprofit organization that has provided or . . . will be providing counseling, medical, or shelter *260 services to the victim or other person injured by the offense. . . .
We have interpreted this statute broadly as authorizing restitution not only for a victim's past mental health counseling, but also a victim's future counseling when the need for this counseling, and the projected amount of the counseling expenses, are firmly established. Peratrovich v. State, 903 P.2d 1071, 1078 (Alaska App.1995); Reece v. State, 881 P.2d 1135, 1138 (Alaska App.1994).
Given the broad authorization for counseling restitution that is codified in AS 12.55.045(a), we conclude that "suitable restitution" in delinquency cases includes mental health counseling for crime victims.
In the present case, the mental health counselor normally charged $100 per hour for her services. Because Z.L.'s aunt was unable to pay this amount, the counselor reduced her fee to $50 per hour so that Z.L. could get the counseling he needed. Thus, the counselor essentially donated half of her fee to facilitate the provision of counseling services to the victim of W.S.'s offense. It was proper for the superior court to order W.S. and his parents to reimburse the mental health counselor for this money.
W.S.'s argument that his restitution obligation should terminate when his term of probation ends
W.S. argues that any restitution obligation imposed by the superior court in a delinquency proceeding must terminate when the minor successfully completes the terms of the court's dispositionhere, the period of W.S.'s juvenile probation.
In support of his position, W.S. points to the Juvenile Justice Standards promulgated by the IJA-ABA (Institute of Judicial AdministrationAmerican Bar Association), which state that a juvenile's duty to make restitution should be of limited duration, and that the duration of this duty should in no case exceed the maximum term of custody or supervision permitted for the juvenile's offense.[5]
But AS 47.12.170(a) expressly declares that an order of restitution entered by the superior court in a delinquency proceeding under AS 47.12.120 "is a civil judgment that remains enforceable after the expiration of the court's [juvenile] jurisdiction over the minor". Because the legislature has spoken on this subject, it does not matter what position the American Bar Association endorses. For, as this Court recognized in K.L.F. v. State, 790 P.2d 708, 711-12 (Alaska App.1990), if the statutes enacted by our legislature embody a policy that is different from the policy advocated by the IJA-ABA, we are obliged to implement the intent of our legislature.
(See also State v. Wentz, 805 P.2d 962, 966 n. 5 (Alaska 1991), where our supreme court declared that if "the ABA Standards tend to conflict with the . . . sentencing scheme established by the legislature, the latter will prevail.")
In W.S.'s opening brief, he does not mention AS 47.12.170(a), much less discuss the discrepancy between this statute and the position advocated by the IJA-ABA standards. However, in his reply brief, W.S. apparently concedes that the statute controlsbecause in that brief, for the first time, W.S. argues that the statute is unconstitutional.
W.S.'s constitutional argument is premised on Alaska Delinquency Rules 1(c) and 1(d).
Delinquency Rule 1(d) states that the Delinquency Rules were promulgated under the Alaska Supreme Court's constitutional authority to enact rules of procedure (see Article IV, Section 15 of the Alaska Constitution)and that, as a consequence, the Delinquency Rules supersede any inconsistent statute enacted by the Alaska Legislature unless that statute was passed by a two-thirds' majority for the express purpose of changing the rule. And Delinquency Rule 1(c) states that the Delinquency Rules are to be construed "to promote . . . expeditious determination of juvenile matters [and] the best interests of the juvenile".
W.S. asserts that, because AS 47.12.170(a) calls for restitution obligations to be enforceable beyond the time when the superior court *261 loses its juvenile jurisdiction over the minor, this statute is inconsistent with "[the] expeditious determination of juvenile matters [and] the best interests of the juvenile". W.S. therefore concludes that the statute is inconsistent with Delinquency Rule 1(c). And, based on this conclusion, W.S. argues that the statute is unconstitutional  because it is inconsistent with a delinquency rule, and because it was not passed by a two-thirds' majority for the express purpose of amending Delinquency Rule 1(c).
There are several flaws in W.S.'s argument.
First, W.S. never presented this argument to the superior court, nor did he include it in his opening brief. Rather, the argument is presented for the first time in W.S.'s reply brief. Arguments presented for the first time in a reply brief are waived.[6]
W.S. argues that we should not apply this rule of waiver to him. He asserts that his argument about the constitutionality of AS 47.12.170(a) is merely a response to the State's argument that the superior court was obliged to follow this statute, no matter what contrary position the IJA-ABA standards advocated.
It is true that a reply brief is designed to allow an appellant to respond to the arguments raised in the appellee's brief. But here, W.S.'s "response" is in fact a new constitutional claim.
In his opening brief, W.S. omitted all mention of the governing statute. He proceeded as if there were no statutory law on this point, and as if this Court were free to adopt the IJA-ABA standard if it seemed reasonable and beneficial. Then the State filed its brief, pointing out that there was indeed a statute on point, and that the courts are obliged to follow this statute despite any contradictory policy advocated by the IJA-ABA. Only then did W.S. think to level a constitutional challenge against this statute.
In a broad sense, W.S.'s constitutional argument is a "response" to the State's brief. But it is a new claim, and it is waived.
Moreover, W.S.'s claim is premised on a misreading of Delinquency Rule 1(c). This rule does not purport to give the Alaska Supreme Court the authority to review all statutes dealing with juvenile delinquency matters, and to effectively veto these statutes if, in the supreme court's view, they appear to be inconsistent with "[the] expeditious determination of juvenile matters [and] the best interests of the juvenile". Rather, Delinquency Rule 1(c) states that the Delinquency Rules themselves are to be interpreted in a manner that promotes these goals.
It remains true that, under Delinquency Rule 1(d), the legislature is not free to alter a procedure specified in the Delinquency Rules unless the legislature does so under the procedure specified in Article IV, Section 15 of our state constitution  i.e., by passing a statute (by a two-thirds' majority) containing a provision that expressly declares the legislature's intention to alter one or more of the Delinquency Rules.
But none of the Delinquency Rules specifies whether a minor's restitution obligation may extend past the end of the minor's probation, or past the time when the superior court loses its juvenile jurisdiction over the minor. In fact, the word "restitution" does not appear in the Delinquency Rules. Thus, AS 47.12.170(a) is not inconsistent with any of the Delinquency Rules.
For these reasons, we reject W.S.'s contention that a minor's restitution obligation must terminate when the minor's probation ends, or even when the superior court loses its juvenile jurisdiction over the minor.
W.S.'s argument that the superior court was obliged to consider his ability to pay when fixing the amount of his restitution obligation
The superior court ordered W.S. and his parents to pay restitution in the amount of $3,185, which was the entire amount of the expenses verified by Z.L.'s aunt and the mental health counselor. W.S. argues that it was improper for the superior court to order this restitution without first inquiring whether *262 W.S. had the financial ability to pay this amount of money.
Again, W.S. relies on the IJA-ABA Juvenile Justice Standards, which declare that the amount of a restitution obligation should be directly related "to the juvenile's offense, the actual harm caused, and the juvenile's ability to pay".[7] But as we explained earlier in this opinion, the fact that the IJA-ABA standards advocate a particular policy may provide useful guidance when the statutes and rules governing delinquency proceedings are silent or ambiguous, but these standards can not be employed to supplant or override contrary policies enacted by our legislature.
In J.C.W. v. State, 880 P.2d 1067, 1072 (Alaska App.1994), this Court held that the superior court must consider the minor's ability to pay when fixing the amount of restitution in a delinquency proceeding. However, our decision was based in large measure on the fact that, at that time, the corresponding adult restitution statutes likewise required a sentencing court to consider a defendant's ability to pay. Id. In footnote 7 of our opinion in J.C.W., 880 P.2d at 1072, we noted that the legislature had recently amended the adult restitution statute to restrict  and, in many instances, prohibit  a sentencing court from considering a defendant's ability to pay when setting the amount of restitution. See former AS 12.55.045(f) & (g), enacted by SLA 1992, ch. 71, § 4. In this footnote in J.C.W., we stated that we intended to "express no view on whether this restriction would affect [future] juvenile delinquency proceedings". J.C.W., 880 P.2d at 1072 n. 7.
Nevertheless, as we noted earlier, when the Alaska Legislature enacted the current version of the juvenile delinquency statutes in 1996,[8] the legislature declared that one of its purposes was to "ensure that [the] victims . . . of crimes committed by juveniles are afforded the same rights as [the] victims . . . of crimes committed by adults". AS 47.12.010(b)(12).
Under the current version of AS 12.55.045(g), a court imposing restitution in a criminal case is prohibited from considering the defendant's ability to pay when assessing the amount of the restitution obligation. In other words, restitution should be awarded for the full amount of the victim's loss, regardless of the defendant's ability to pay.
This fact  that the legislature has decreed that restitution in criminal cases is to be awarded without regard to the defendant's ability to pay  suggests that when the legislature directed the superior court to order "suitable restitution" in delinquency cases (see AS 47.12.120(b)(4)), the legislature intended superior court judges to award restitution to the same extent that restitution would be awarded in an analogous adult criminal case under AS 12.55.045(g)  in other words, restitution for the full amount of a victim's loss, regardless of the minor's ability to pay.
This Court recently upheld the constitutionality of AS 12.55.045(g) against the arguments that due process and a defendant's right to rehabilitation required a sentencing court to consider a defendant's ability to pay when the court set the amount of restitution in an adult criminal case. In Hodges v. State, 158 P.3d 864 (Alaska App.2007), we held that the legislature could lawfully direct sentencing courts to order restitution for the full amount of a victim's loss, without regard to the defendant's ability to pay  although sentencing courts are still obliged to consider a defendant's ability to pay when they set the terms under which the restitution obligation will be enforced (i.e., the frequency and amount of the defendant's payments).
Given our conclusion that AS 12.55.045(g) is constitutional, and given the mandate of AS 47.12.010(b)(12) that the victims of delinquent acts are to be accorded the same rights they would receive if they were victims of a crime committed by an adult, it would seem that the superior court is not obliged to consider  indeed, the superior court should not consider  a delinquent minor's ability to pay when the court sets the amount of the "suitable restitution" required by AS 47.12.120(b)(4).
*263 But this tentative conclusion is clouded by events that transpired in the 2004 session of the legislature.
During the 2004 session, the legislature considered House Bill 357, a bill that again amended the restitution statutes, for the avowed purpose of "requir[ing] judges to order restitution from criminals in all cases where a victim has suffered a financial loss."[9]
During its debates on HB 357, the legislature considered amending AS 47.12.120(b), the statute that governs restitution in juvenile delinquency cases. Initially, HB 357 would have added the following provision to this statute: "The court may take into consideration the delinquent minor's ability to pay past age 19, or the age [at] which the court retains [sic: loses] jurisdiction over the minor, when determining the amount of the . . . restitution."[10] The legislature eventually decided not to add this language to the statute, because they concluded that the superior court already had the authority to take a minor's long-term ability to pay into account.[11]
This discussion obviously supports the conclusion we reached in the preceding section of this opinion: the conclusion that the legislature intended a minor's restitution obligation to continue after the minor's term of probation ended, and even after the superior court lost its juvenile jurisdiction over the minor. But this discussion is also premised on the idea that the superior court should be taking the minor's ability to pay into account when setting the amount of restitution.
Moreover, another provision of the current delinquency code, AS 47.12.120(b)(4)(C), authorizes the superior court to require the minor and the minor's parents "to submit financial information . . . for the purpose of establishing the amount of restitution or enforcing an order of restitution under AS 47.12.170". (Emphasis added) This provision likewise suggests that the superior court should be considering the minor's ability to pay when setting the amount of restitution.
(The State argues that the financial information required by AS 47.12.120(b)(4)(C) is intended only for the purpose of establishing a payment schedule or otherwise fashioning the terms under which the restitution order will be enforced, and that this financial information is to have no effect on the amount of restitution ordered. But the State's suggested reading of the statute is contradicted by the words of the statute itself, and the State cites no legislative history or other authority to support its view that the statute should be interpreted in this limited way.)
In sum, while there is some authority to support the proposition that the superior court should not consider a minor's ability to pay when setting the amount of restitution, there is also authority for the opposite proposition  the view that the superior court should take the minor's ability to pay into account.
We conclude that we need not resolve this issue in W.S.'s case. Even if the superior court was obliged to consider W.S.'s ability to pay when the court set the amount of restitution, the record shows that the superior court at least implicitly found that W.S. would be able to pay the restitution. Further, the record contains no suggestion that W.S. will be unable to satisfy the restitution obligation.
As we explained earlier, the superior court ordered restitution in the amount of $3,185. Pursuant to AS 47.12.120(b)(4), the court made W.S. and his parents jointly and severally liable for this amount. Moreover, the superior court ordered both W.S. and his *264 parents to apply for the Alaska Permanent Fund Dividend if they are eligible  and there is nothing in the record to suggest that they are not eligible.
At the hearing, the superior court noted that W.S. could seemingly pay the entire restitution obligation from his Permanent Fund dividends. Thus, the superior court found that the restitution obligation appeared to be within W.S.'s means.
(The restitution order in this case was entered in February 2007. We take judicial notice that the Permanent Fund Dividend for 2007 was $1,654.[12] Assuming that the amount of the dividend remains relatively constant, W.S. will be able to pay the entire restitution obligation in two years, without contribution from his parents, by using his Permanent Fund dividends.)
In addition, as this Court noted in J.C.W., the fact that a minor is made jointly liable with other people for the restitution means that the minor's share of this obligation will probably be considerably less than the whole. J.C.W., 880 P.2d at 1072-73. Here, W.S. will be responsible for the entire $3,185 only if his parents pay nothing. If, on the other hand, W.S. contributes his dividend from the current year and his parents contribute one of their dividends, this would satisfy the restitution obligation in a single year.
In other words, the record shows that the superior court at least implicitly considered W.S.'s ability to pay, and there is nothing in the record to suggest that W.S. and his parents are ineligible for the Permanent Fund Dividend, or that W.S. otherwise lacks the means to pay. Thus, even assuming that the superior court proceeded under the assumption that W.S.'s ability to pay was not relevant to the issue of how much restitution should be ordered, and even assuming that this assumption was mistaken, any error was harmless.
Conclusion
The judgement of the superior court is AFFIRMED.
NOTES
[1] See AS 47.12.160(a).
[2] AS 11.41.230(a)(3) and AS 11.61.120(a)(1), respectively.
[3] Ned v. State, 119 P.3d 438, 446 (Alaska App. 2005); Lonis v. State, 998 P.2d 441, 447 n. 18 (Alaska App.2000).
[4] See R.I. v. State, 894 P.2d 683, 685-86 (Alaska App.1995) (employing adult restitution provisions when analyzing the superior court's restitution authority in delinquency cases); J.C.W. v. State, 880 P.2d 1067, 1072 (Alaska App.1994) (likening the delinquency restitution provision to the statute governing restitution for adult offenders); J.M. v. State, 786 P.2d 923, 923 (Alaska App.1990) (noting that it was appropriate to refer to the adult criminal statutes when interpreting "suitable restitution" under the delinquency law).
[5] IJA-ABA Juvenile Justice Standards, Standards Relating to Disposition, § 3.2-(B)(1)(f).
[6] Petersen v. Mutual Life Ins. Co. of New York, 803 P.2d 406, 411 (Alaska 1990); Hitt v. J.B. Coghill, Inc., 641 P.2d 211, 213 n. 4 (Alaska 1982).
[7] IJA-ABA Juvenile Justice Standards, Standards Relating to Disposition, § 3.2(B)(1)(a).
[8] SLA 1996, ch. 59, § 46.
[9] See the Sponsor Statement for 2004 HB 357, available at:

http://www.akrepublicans.org/samuels/23/spst/samu_hb357.php.
[10] See the Minutes of the House Judiciary Committee for January 30, 2004, available at:

http://www.legis.state.ak.us/basis/get_single_ minute.asp?session=23&beg_line=00655&end_ line=&1f01132&time=1310&date=20040130& comm=JUD&house=H.
[11] Minutes of the House Judiciary Committee for February 9, 2004 (discussion between Sara Neilson, staff to Representative Ralph Samuels, and Representative Max Gruenberg), available at:

http://www.legis.state.ak.us/basis/get_single_ minute.asp?session=23&beg_line=01411&end_ line=01743&time=1304&date=20040209& comm=JUD&house=H.
[12] See the Alaska Department of Revenue's Permanent Fund Dividend home page, https://www. pfd.state.ak.us/.